**LEE et al. v. EMERSON–BRANTINGHAM IMPLEMENT CO. (No. 8366.)**

(Court of Civil Appeals of Texas. Dallas. April 24, 1920. Rehearing Denied May 22, 1920.)

**1. Exemptions ⚶48(2)—Compensation agreed on after service "current wages," within exemption provision.**

Under Const. art. 16, § 28 (Vernon's Sayles' Ann. Civ. St. 1914, art. 306), providing that current wages for personal service shall not be subject to garnishment, wage of $75 a month, totaling $300, agreed upon by widow and decedent's manager and brother as fair compensation to defendant for taking charge of decedent's business during his illness, was exempt as "current wages for personal service," though at time agreement for services was made no particular compensation was agreed on; purpose of the provision being to exempt wage until due and in possession of earner, provided, if he is unable to collect, exemption continues until he can collect, in exercise of ordinary diligence.

[Ed. Note.—For other definitions, see Words and Phrases, Current Wages.]

**2. Fraudulent conveyances ⚶51(1)—Creditors without interest in exempt property.**

Creditors have no interest in exempt property of debtors, and cannot claim conveyance thereof is void, as fraudulent as to them.

**3. Fraudulent conveyances ⚶87(2)—Delivery by insolvent of value in excess of debt fraudulent and void.**

When insolvent debtor, in payment of preexisting debt, delivers value in excess of debt, thus placing surplus beyond reach of creditors, conveyance is fraudulent in law, and void as to excess.

**4. Fraudulent conveyances ⚶181(1) — Seller to insolvent debtor not liable to creditors for purchase money.**

Where debtor with equivalent of money purchased oil lease from one who acted in good faith, though knowing debtor was insolvent, seller is not liable to debtor's creditors for money received on any theory of fraudulent conveyance.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Emerson-Brantingham Implement Company against R. H. Lee, wherein, after judgment for plaintiff, writ of garnishment was issued and served on the American National Insurance Company; defendant Lee and another intervening. From a judgment for plaintiff for the fund garnisheed, defendant and the other intervener appeal. Reversed and rendered.

Scott & Fagan, of Dallas, for appellants.
Spence, Haven & Smithdeal, of Dallas, for appellee.

RASBURY, J. Appellee, having judgment against appellant R. H. Lee, by its agent made the statutory affidavit and procured the issuance and service of the writ of garnishment upon the American National Insurance Company, which in answer thereto admitted it was indebted to Lee $440.65. Lee intervened, and asserted, in substance, that the debt due him was exempt from garnishment because it represented wages for personal services rendered by him to W. T. and Leona Hicks, which they were unable to pay at the time, and in payment of which, after the death of W. T. Hicks, his wife, Leona, assigned that much of insurance on the life of her husband owing by the American National Insurance Company. Lee also asserted that before the service of the writ he had transferred his interest in said fund to Will Sayers. Sayers also intervened, and asserted that the fund assigned by Mrs. Hicks to Lee had been in turn assigned to him for value. Trial was by the court, resulting in judgment for appellee for the fund. From that judgment this appeal is taken.

The facts deducible from the evidence, which is not in conflict on essential matters, are in substance these: The American National Insurance Company was indebted to Leona C. Hicks in the amount of $5,090.67 on account of insurance policies on the life of her husband, W. T. Hicks. Before the debt was paid she assigned $440.65 thereof to Lee, and directed the insurance company to pay him that amount. Hicks, prior to his death, was in business in Dallas, and became seriously ill with a malady that required a surgical operation. He requested Lee to assume charge of his business, and agreed to compensate him for his labor. No stipulated period of employment or compensation was agreed on. Lee rendered service for a period of four months. Hicks died. After his death Lee reached an agreement with Mrs. Hicks, Hicks' manager and brother, that $75 per month, or a total of $300, was satisfactory compensation for the services he had rendered. That amount was covered by the assignment to the insurance company. The balance, $140.65, represented an indebtedness due Lee by Hicks —in fact, a part of the premium due on the policies of insurance Hicks had with the insurance company, and which Lee had induced him to take. One day before the service of the writ of garnishment upon the insurance company, Lee transferred his portion of the insurance fund to Sayers in payment of an oil lease in Wichita county, assigned by Sayers to him. The bona fides of the transfer was not assailed, though Sayers testified that when he transferred the lease he thought Lee's interest in the fund was $1,000, which Lee in his assignment to Sayers asserted it was. At the time of the transfer to Sayers

by Lee, the latter was insolvent, and known to be so by Sayers.

[1] Section 28 of article 16 of the Constitution, which is also article 306 of Vernon's Sayles' Texas Civil Statutes, enacts that "current wages for personal service" shall not be subject to garnishment. It is the contention of appellant that the facts we have recited bring the money due Lee by the insurance company within the constitutional provision, while it is the contention of appellee that they do not. Appellee relies on the ruling in First National Bank, etc., v. Graham, 22 S. W. 1101, as support for its contention. The substance of the holding in that case was that "current wages" contemplated a sum to be paid for personal services as they were rendered, as by the hour, day, week, month, or year, and that the fee due an attorney for professional services in a single case was not such current wages for personal services. In the case at bar Lee was employed to and did perform personal services in conducting Hicks' business during his illness. That the services were rendered by him personally is not denied. There was, however, no agreement fixing the amount of the compensation or the period of employment, whether for an hour, day, week, or month. The agreement merely was that Hicks would compensate Lee, if he would render the service. Do such facts make the amount any the less exempt by the Constitution? We conclude not, in view of the holding in Dempsey v. McKennell, 2 Tex. Civ. App. 284, 23 S. W. 525. Dempsey, while ill, employed McKennell to nurse him. There was no agreement between the parties fixing either the period of employment or the compensation. On that issue the court declared:

"The mere circumstance that the rate of compensation is not agreed on in advance ought not * * * to take the case out of the exemption. In nursing [appellant], appellee was actually occupied by the day, and his right to compensation accrued as he served, being measured by customary or reasonable rates, rather than by express contract."

The facts in the case cited and the one at bar are practically identical, and comment as a consequence is unnecessary. Then, was the amount due Lee "current" at the time of service of garnishment? In First National Bank v. Graham, supra, "current" was said to mean "running; now passing, or present in its progress." In Bell v. Indian Live Stock Co., 11 S. W. 344, 3 L. R. A. 642, it was held that, when wages included in the provision are voluntarily left with the one owing them, they thereby lose their exemption; in short, cease to be current. It was said:

"The wages are payable monthly, and were exempt for the month current at the time of the service of the writ; but the exemption ceased to apply when the wages became past due."

The court further said in that case:

"Cases may arise, however, in which a party would not be entitled to the benefit of the writ of garnishment sued out after the wages became due."

The court did not, however, instance such a case. Subsequently, in the case of Davidson v. Logeman Chair Co., 41 S. W. 824, it was decided that, where the wages were involuntarily left with the employer because of inability to collect them, the exemption continued until the sum was collected, or remained current. Such was Lee's situation. He was unable to collect before the writ impounded the fund. The tendency of the decisions, it thus appears, and in our opinion the purpose of the constitutional provision, is to exempt the wage until it is due and is in possession of the wage-earner, provided that, if he is unable to collect same when due, the exemption then continues to such time when he can collect same in the exercise of ordinary diligence. We therefore conclude that $300 of the fund was exempt, and the court as a consequence erred in subjecting that amount to the writ of garnishment either against Lee or Sayers; for, if exempt, Lee's creditors had no right to the money because of Lee's insolvency and Sayers' knowledge of that fact.

[2, 3] The foregoing conclusion presents in natural order appellant's attack upon the finding of the court that Lee was notoriously insolvent, of which Sayers was cognizant at the time he accepted the transfer of the fund in payment of the oil lease and the court's conclusion of law in that connection that such transfer was a fraud on creditors. Such issue can, of course, only affect the fund to the amount of $140.65, for as we have indicated, and as is well settled, creditors have no interest in the exempt property of debtors. As we have shown in our statement of the facts, the bona fides of the sale of the lease by Sayers and the transfer of the fund by Lee in payment thereof is not denied. But because Lee was insolvent, and Sayers aware of it, the court was of opinion that the transfer was in law a fraud upon creditors. It has, of course, been repeatedly held, and is settled law, that when an insolvent debtor, in payment of a pre-existing debt, delivers property in value in excess of the debt, thereby placing the surplus beyond the reach of creditors, the conveyance is fraudulent in law and void as to the excess.

[4] The transaction between Lee and Sayers, however, is not, in our opinion, such a one. The most that can be said of it is that Lee, with the equivalent of money in hand, purchased an oil lease, as he might have purchased any other commodity he desired. We know no rule that denies another the right, in good faith, to sell his property to a known insolvent person, or of any rule that makes

the seller liable to the purchaser's creditors for the money received in payment thereof, save in the class of cases first mentioned. Even in those cases when the pre-existing debt is genuine, and the 'debtor receives no more than sufficient to pay the debt, the transaction is not fraudulent. · Bruce v. Koch, 94 Tex. 192, 59 S. W. 540. In the case at bar there is no showing that the oil lease was of any less value than the money Sayers received; in fact, the value set on the lease was $1,000, while the money paid was $440.65.

Holding the views above stated on the law of the 'case, and the facts being without conflict, the judgment of the court below is reversed, and judgment here rendered for appellant Sayers for the fund in dispute and all costs in this court and the court below.

. Reversed and rendered.