## SUTHERLAND v. YOUNG. (No. 484.)

(Court of Civil Appeals of Texas. Waco. March 17, 1927. Rehearing Denied March 24, 1927.)

1. Exemptions ⊗═➤48(I) — Wages cease to be "current wages," exempt from garnishment, on receipt by wage-earner, though kept in separate fund.

Wages cease to be "current wages," exempt from garnishment, immediately on being paid to and received by wage-earner, though kept in separate fund or account apart from other earnings.

[Ed. Note.—For other definitions, see Words and Phrases, Current Wages.]

2. Constitutional law ⊗═➤70(I)—Courts' duty is to construe, not enact, law.

It is courts' duty to construe the law and not their prerogative to enact legislation.

3. Exemptions ⊗═➤48(I)—County auditor's salary, voluntarily placed in bank by him, was subject to garnishment.

County auditor voluntarily placing salary received in bank, thereby creating relation of debt-

or and creditor between them, caused funds to be subject to garnishment, as if he had invested them in property not exempt under statutes.

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Garnishment proceeding by O. C. Young against the Marlin National Bank on a judgment against John Sutherland. Judgment for plaintiff, and Sutherland appeals. Affirmed.

Cecil R. Glass, of Marlin, for appellant.
Bartlett & Dodson, of Marlin, for appellee.

BARCUS, J. The facts in this case are undisputed. Appellant was employed by Falls county as county auditor at a salary of $190 per month, to be paid at the end of each calendar month. On April 1, 1926, he received a check for $190 in payment of his March salary, and immediately deposited same in the Marlin National Bank to his credit. On the day the fund was so deposited appellee, who held a valid judgment against appellant, caused a writ of garnishment to be served on said bank, and thereby impounded said fund. It is admitted that appellant had no other funds in the bank and that the entire sum in his name in the bank was the money which he had received for the past month's salary. The sole issue to be determined is whether the funds thus deposited are exempt to appellant as current wages. The trial court held that the funds were subject to garnishment and rendered judgment accordingly. Appellant contends that, so long as the wages can be traced, same continue to be exempt to him under the Constitution and statutes of Texas.

[1, 2] In Bell v. Indian Live Stock Co. (Tex. Sup.) 11 S. W. 344, 3 L. R. A. 642, the employee had voluntarily left his wages with his employer, and in discussing the question whether the wages so left were "current wages" subject to garnishment, the Supreme Court held that same had ceased to be current wages, and in its opinion stated:

"While we think it clear that the money in the hands of the garnishee [employer] was due to Addington [employee] as wages for personal service, within the meaning of that phrase as used in our Constitution and statutes, we are also of opinion that the money had ceased to be current wages, and that it was subject to the writ of garnishment. The wages were payable monthly, and were exempt for the month current at the time of the service of the writ, but the exemption ceased to apply when the wages became past due."

In Davidson v. Logeman Chair Co. (Tex. Civ. App.) 41 S. W. 824, the employee had voluntarily left his wages when due in the hands of his employer, and the court held same were no longer current wages and in discussing the question stated:

When the employee "voluntarily left his wages * * * in the hands of his employer, * * *

the amount was no longer current wages, but was in the same position as though he had drawn the amount and deposited it with a banker. The exemption was destroyed by the money being allowed to remain in the hands of the employer. * * * Whenever the wages become subject to the control of the employee, and he voluntarily leaves them with his employer, or collects and deposits them with some one else, he has robbed them of their character as current wages, and the protection extended to them by Constitution and statute is lost."

The holdings in the above cases are cited with approval in Gaddy v. First Nat. Bank (Tex. Civ. App.) 283 S. W. 277; Id., 115 Tex. 393, 283 S. W. 472; Mitchell v. Western Casualty & Guaranty Ins. Co. (Tex. Civ. App.) 163 S. W. 630; Lee v. Emerson-Brantingham Implement Co. (Tex. Civ. App.) 222 S. W. 283; Warner v. Willard, 115 Okl. 224, 242 P. 550; 12 Am. & Eng. Ency. Law (2d Ed.) 137. A very similar question was involved in the construction by the courts of the statute with reference to proceeds derived from pensions paid by the United States government. Article 9080, U. S. Compiled Statutes, provides:

"No sum of money due, or to become due, to any pensioner shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, * * * but shall inure wholly to the benefit of such pensioner."

The United States courts, in construing the above statute, hold that pension money received from the government loses its exemption so soon as it has been paid to and received by the pensioner, and that same is not exempt from the payment of his debts although it is kept separate and distinct from other funds owned by him. In re Jones (D. C.) 166 F. 337; McIntosh v. Aubrey, 185 U. S. 122, 22 S. Ct. 561, 46 L. Ed. 834.

[3] Our Constitution and laws exempt to the head of each family the homestead, and our Supreme Court held that, immediately upon the homestead being sold and converted into cash, the funds derived therefrom lost their exemption and became subject to the payment of debts due by the head of the family. Mann v. Kelsey, 71 Tex. 609, 12 S. W. 43, 10 Am. St. Rep. 800; Kirby v. Giddings, 75 Tex. 679, 13 S. W. 27. In order to enable a person to sell his home and invest in another, the Legislature, in 1897, passed a statute which exempted the proceeds of a voluntary sale of the homestead for six months. Article 3834, Revised Statutes 1925. If the Legislature desires to exempt the wages after same have been collected and put under the control of the wage-earner for a definite length of time, as it did the proceeds from the voluntary sale of the homestead, it can do so. It is, however, the duty of the courts to construe the law, and it is not their prerogative to enact legislation. It appears to us that, under the decisions above cited, our courts have definitely held

that wages cease to be "current wages" as contemplated by our exemption statutes immediately upon their being paid to and received by the wage-earner. If appellant's contention is correct, wages would continue to be exempt so long as they were kept in a separate fund or account apart from other earnings or income that might belong to the wage-earner. If wages deposited in a bank continued to be exempt, the same rule should make them exempt if left with the employer. We have reached the conclusion that, when wages are paid to and received by the wage-earner, they thereby cease to be current wages, and the exemption statute does not apply thereto. Appellant, having taken his wages and voluntarily placed them in the bank, and thereby created the relation of debtor and creditor between himself and the bank, caused the funds to be subject to garnishment, the same as if he had invested the same in property that was not exempt to him under the statutes.

We have examined all of appellant's assignments of error and same are overruled. The judgment of the trial court is affirmed.