## ALEMITE CO. OF NORTH TEXAS, Inc., v. MAGNOLIA PETROLEUM CO.

### No. 12682.

Court of Civil Appeals of Texas. Fort Worth.
May 14, 1932.

Richard Owens, of Fort Worth, for appellant.

Dan Ferguson, of Dallas, and Mitchell Davis, of Cleburne, for appellee.

CONNER, C. J.

This case is one in which the Alemite Company of North Texas, Incorporated, recovered a judgment against T. S. Moon on the 2d day of December, 1930, in the county court of Tarrant county for $238.20 with interest from the date of the judgment at the rate of 10 per cent. per annum and all costs of suit, and the same is now in full force and effect; no part thereof having been paid.

On December 30, 1930, the Alemite Company in due form and manner instituted garnishment proceedings against the Magnolia Petroleum Company, a corporation, alleging that it was indebted to the defendant Moon or had in its hands effects belonging to him.

The petroleum company answered that it was indebted to Moon in the sum of $104.35 as commissions due him covering the sale of oil, gasoline, and other petroleum products and would be further so indebted for commissions at the end of the month when the sales book would be posted. It further answered that it was informed that Moon would claim the amounts due him as in the nature of current wages and hence exempt from garnishment by virtue of article 4099, Rev. Civ. Statutes, and prayed that Moon be made a party, said exemption claim be determined, and that the company be allowed $25 as the reasonable cost of an attorney's fee.

Moon, having been duly impleaded, answered to the effect that the sums due and to become due him by the petroleum company were for current salary or wages covering his personal services in conducting and operating an oil and filling station at Cleburne, Johnson county, Tex., and as such was exempt from garnishment under the constitution and laws of Texas.

The trial was by the court without a jury and resulted in findings and a judgment against the Alemite Company and in favor of Moon and the petroleum company and for all costs and an attorney's fee of $25, from which the Alemite Company has duly prosecuted this appeal.

There is no statement of facts in the record, but from the court's findings it appears, among other things, not questioned that the Magnolia Petroleum Company maintains at Cleburne, Tex., a service station, consisting of a building, tanks, pumps, and equipment for supplying and serving motor vehicles with gasoline, oils, and other petroleum products, for sale to the public; that appellee Moon operates the station under the terms of a written contract which provides, among other things not necessary to mention, that the station was to open at 6 a. m. and close at 10 p. m.; that Moon was not to leave Cleburne without notifying the company and obtaining permission to do so or sell any of the products upon credit without permission; that he was to employ at his own cost such assistants as he should desire and assume full responsibility of all loss or damage caused by them, to keep a record of all stocks delivered to him for sale and of all sales for cash or on credit and make due reports thereof, etc. By the terms of the contract Moon was permitted to maintain and operate for himself, and not as agent or representative of the company and under its supervision, vulcanizing machinery and fixtures, automobile accessories, tires, etc., but on account of which the company was to be without any responsibility.

For his services Moon was to receive commissions from 2½ to 3½ cents per gallon on gasoline and 20 cents per gallon of all oils sold, dependent on the number of gallons sold, payable on or about the 10th day of each month after report of sales. It is undisputed that Moon devoted his entire time in the performance of his duties in operating the filling station in accordance with the terms of the

contract and that on the date of the judgment below the petroleum company was due him on account of commissions the amount of the judgment.

The sole question presented for our determination is whether under the circumstances stated the commissions mentioned are exempt from garnishment.

Section 28 of article 16 of the Constitution provides that: "No current wages for personal service shall ever be subject to garnishment."

It is also so declared in our Revised Statutes, articles 3835, 4099, and paragraph 16 of article 3832.

"Current Wages" has often been defined as "such as are paid periodically, or from time to time as the services are rendered or the work performed." Black's Law Dictionary, and cases hereinafter cited.

In Bell v. Indian Live-Stock Co. (Tex. Sup.) 11 S. W. 344, 3 L. R. A. 642, it was held that a person employed by a live stock company as manager at a monthly salary of $200, though he was also a stockholder, was entitled to exemption under the Revised Statutes providing that current wages for personal services shall never be subject to garnishment, though in the same case it was held that wages voluntarily left in the possession of the employer after they become due cease to be "current," and are not exempt.

In 25 Corpus Juris, p. 65, § 104, it is said, in part, that: "The earnings of a person not engaged under the usual contract of employment as laborer or artisan are often considered wages within the meaning of the statutory exemption. Thus where the remuneration is according to the work done, and not according to the length of employment, it has been still considered wages, even though the laborer himself employs a helper to aid him in part of his work. Payment of commissions is a payment for work done, and is 'wages' within the meaning of the statute."

In Dempsey v. McKennell, 2 Tex. Civ. App. 284, 23 S. W. 525, it was held that the amount due a person for services under a contract by which he agreed to nurse another during an attack of sickness, and by which the latter agreed to pay him well, was "current wages for personal services," within the meaning of the exemption law, though neither the compensation to be paid nor the time of payment was fixed.

In the case of First National Bank v. Graham (Tex. App.) 22 S. W. 1101, it was held that money due an attorney for legal services is not exempt from garnishment, under the Constitution. This holding was evidently upon the assumption that the compensation did not appear to have been earned or payable currently, as by the day, week, or month,

within the meaning of the constitutional exemption.

In Lee v. Emerson-Brantingham Implement Co. (Tex. Civ. App.) 222 S. W. 283, it was held that personal service in taking charge of a decedent's business during his illness at an agreed wage of $75 a month and totaling $300 was exempt as "current wages for personal service," though at the time the agreement for such service was made no particular compensation was agreed upon.

In Sydnor v. City of Galveston (Tex. App.) 15 S. W. 202, it was held that the amount payable to a physician who had been employed by the city to attend smallpox patients at $30 a day and who had been retained for 56 days was exempt from garnishment as "current wages for personal services."

In Radford Grocery Co. v. McKean, 41 S. W.(2d) 639, by this court, it appeared that one Tinsley was employed as a salesman for the grocery company at a stated sum per month for his services, plus a further compensation at the end of the year to be based on a certain percentage of sales made by Tinsley above a certain minimum amount of sales required by the grocery company, and that at the time of the service of a writ of garnishment that had been issued against the grocery company, said grocery company was indebted to Tinsley on account of such additional compensation the sum of $660. We defined the terms "current wages" and held that the exemption statute should be liberally construed to the end that the laborer should be allowed means of obtaining a livelihood and that the bonus or commission due and payable to Tinsley at the end of the year was current wages for personal services within the meaning of the Constitution and articles of the statutes we have already noted.

In Adcock v. Smith, 97 Tenn. 373, 37 S. W. 91, 56 Am. St. Rep. 810, by the Supreme Court of Tennessee, it was held that the compensation due to a person who had been employed by an iron company to puddle iron at a fixed rate per ton and who was to receive his pay monthly on a particular day, and who was required to begin and quit work at certain hours, was wages within the meaning of the Tennessee statutes exempting from execution or attachment the wages of a mechanic or laboring man.

In behalf of appellant it is insisted that this case is distinguishable from that of Radford Grocery Co. v. McKean and others cited above. While of course there are to be found distinguishing features in the cases, we think they are of an immaterial character and not controlling. We have many fields of labor of differing requirements and attendant circumstances, but whatever may be said of other particulars, the laborer who personally serves for a current compensation or wage in com-

pliance with the requirements of the Constitution and statutes relating to the subject is entitled to the protection and benefits contemplated by those enactments.

We conclude that the trial court's findings of fact and conclusions of law should be adopted, and the judgment below affirmed in all respects.