## SHAHAN v. BIGGS & CO.

### No. 13836.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 9, 1938.

Rehearing Denied Jan. 13, 1939.

F. V. Hinson, of Graham, for appellant.

Carrigan, Hoffman & Carrigan, of Wichita Falls, for appellee.

SPEER, Justice.

This appeal grows out of a garnishment proceeding heard by the District Court of Wichita County, Texas.

Biggs & Company, a corporation, being the owner of a judgment against A. L. Shahan, procured the issuance of a writ of garnishment against M. & V. Tank Company, a corporation, domiciled in Wichita County, based upon the judgment, alleging that the garnishee held funds or property belonging to Shahan.

Garnishee answered that it was indebted to Shahan in the sum of $738.47, due for commissions and personal services performed by Shahan, and believed by garnishee to be exempt from the writ of garnishment.

Shahan, having intervened as a party defendant, likewise answered, alleging: (1) that the funds due him by garnishee represented personal earnings and current wages for personal services performed; (2) that he was working for garnishee under a contract of employment and was paid periodically for services performed; (3) that the compensation agreed to be paid to him by garnishee was exempt from the writ of garnishment under the Constitution of this State and the statutory provisions enacted under the Constitution.

Biggs & Company controverted the answers of garnishee and Shahan upon the theory that the funds shown to be due Shahan by garnishee were not exempt from garnishment, but that said funds were due Shahan for services performed by him for garnishee as an independent contractor and did not constitute current wages for personal services perform-

ed, and were therefore subject to the writ of garnishment.

The hearing was before the court without the intervention of a jury. The court found in favor of Biggs & Company, and rendered judgment accordingly for the amount shown by the answer to be owing to Shahan. Shahan excepted and gave notice of appeal to this court. The issue is before us on the perfected appeal.

Appellant assigned errors, (a) because the evidence was insufficient to support the judgment rendered, (b) because the court erred in holding that the funds garnished were not exempt from garnishment as current wages for personal services rendered by Shahan, and (c) because the court should have held such funds were exempt from garnishment as current wages for personal services performed.

These assignments are presented under a single proposition, which reads: "Where the defendant appellant was by contract employed in the business of selling oil field tanks and equipment, on a ten per cent commission basis, receiving such commission periodically, and the owner of the tanks and equipment reserving all authority and power to accept or reject any sale and the owner prescribing the terms of sale, time and place of delivery, and erection of tanks and equipment, and the owner handling all moneys and collections, the defendant soliciting orders only, and where all the funds due defendant were for such services, such compensation was 'current wages' for personal services performed, and exempt from garnishment."

It is the contention of appellant that because the relation between M. & V. Tank Co. and Shahan was that of master and servant, the amount due for compensation constituted current wages, such as are exempt by virtue of the Constitution, Art. 16, section 28, Vernon's Ann.St. and R.C.S. Arts. 4099, 3832, section 16, and 3835, section 5.

Appellee, Biggs & Company, contends Shahan occupied the relation to the garnishee Tank Company of independent contractor, and therefore the compensation earned was subject to the writ. These respective contentions present the sole question involved in this appeal.

The contract of employment, under which the fund arose, is contained in a letter from M. & V. Tank Co. to Shahan; omitting caption, shown to be a letterhead, it reads:

"Wichita Falls, Texas
"July 13, 1933.
"Mr. A. L. Shahan
"Graham, Texas
"Dear Sir:

"Confirming our conversation in Graham regarding a working arrangement whereby you may sell our products on a commission basis.

"It is our intention to maintain a stock of tanks and separators in Graham on ground sub-leased from you. We to pay the rental charges and occupy sufficient space for our needs.

"You to receive a ten (10%) per cent commission on the F. O. B. Wichita Falls price on all sales made by you, and it is clearly agreed and understood that all sales must be subject to our approval and acceptance.

"Said ten (10%) per cent commission is due and payable to you upon our approval of sale and delivery of goods to customer, and the receipt by us of a properly signed sales order.

"It is clearly agreed and understood that you have no right or authority to act for us except as above outlined.

"This agreement is subject to cancellation upon thirty days written notice by either party.
"Yours very truly,
"M. & V. Tank Company
"By Frank A. Mitchell.
"Accepted, A. L. Shahan."

The evidence shows without conflict that Shahan operated under the foregoing contract. It was also shown without controversy that for three years prior to the accrual of the funds garnished, the parties, by mutual agreement, had abrogated the clause of the contract relating to the intention of the Tank Company to keep and maintain a stock of tanks and separators at Graham, Texas, and that none were so kept there.

The testimony also discloses that the fund garnished had accrued during a period of approximately one-half of a month, and that by custom in the past, settlement between the Tank Company and Shahan was made on about the first and fifteenth of each month.

If, under these circumstances, the relationship of master and servant existed between the Tank Co. and Shahan, the fund would be exempt from garnishment, while upon the other hand, if that relationship

was that of an independent contractor, the funds would be subject thereto.

State Constitution, Art. 16, Sect. 28, provides that no current wages for personal services shall ever be subject to garnishment. To the same effect are the provisions of Arts. 4099, 3832, sect. 16, and 3835, sect. 5, R.C.S.

To constitute compensation as wages for services performed necessarily requires that there be a relationship of master and servant, or more broadly speaking, one of principal and agent. .

In the early case of Cunningham v. International Ry. Co., 51 Tex. 503, 32 Am. Rep. 632, a very comprehensive definition is given of what elements enter into the relationship of master and servant, as distinguished from those of employer and independent contractor. There, it was said:

"In the first relation, that of master and servant, the master has the right to direct the conduct of the servant and the mode and manner of doing the work, and· hence his corresponding liability for an improper execution of the same. * * *

" 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details.' * * *

"In the second relation, that of employer and independent contractor, there is no such control and direction by the employer over the servant in the details of the work.

" 'The true test * * * by which to determine whether one who renders service to another does so as a contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer *only as to the result of the work,* and not as to the means by which it is accomplished.' [Italics ours.] * * *

"It is now the well-established doctrine in Europe and the general prevailing rule in this country, that the ordinary relation of principal and agent and master and servant does not subsist in the case of an independent employé or contractor who is not under the immediate direction of the employer."

A similar rule to that above stated, is announced in Wallace v. Southern Cotton Oil Co., 91 Tex. 18–21, 40 S.W. 399, where the court, in discussing one's right of recovery under the evidence there of-fered, said [page 400]: "If Davis was an independent contractor in the sense that the company had no right of control as to the manner in which the work was to be done, then he was not the servant of the company; and the plaintiff, having been employed by him, cannot recover." Citing Cunningham v. International Railroad Co., supra.

■ National Cash Register Co. v. Rider, Tex.Com.App., 24 S.W.2d 28, we think is decisive of the question of whether the relationship of master and servant, or that of employer and independent contractor, existed in the instant case; there it is said [page 30]: "In every case which turns upon the nature of the relationship between the employer and the ·person employed, the essential question to be determined is whether the employer had the right to exercise control over the details of the work. [Citing authorities.] Weeks testified, among other things: 'The National Cash Register Company has nothing to do with where I go and when. They have no interest in my work, other than the results, the totals of business that I turn in.' * * * That Weeks was paid upon a commission basis is not necessarily a material fact in this case." Citing Cunningham v. International Railroad Co., supra. The opinion further quotes at length from the last cited case, mainly those things quoted by us above from that opinion.

The rule by which we may determine whether a person is, under given facts, a servant of the master, or is an independent contractor, is no different in such cases as this, and those which involve an interpretation of the Workmen's Compensation Act in this State. Vernon's Ann. Civ.St. art. 8306 et seq. The principle was involved in Southern Surety Co. v. Shoemake, Tex.Com.App., 24 S.W.2d 7, where the claimant relied upon the fact that he was an employee within the statute, and the case was defended upon the ground that he was an independent contractor. The court announced the same principles and tests made by the Supreme Court in Cunningham v. International Railroad Co., supra, and cited that case in connection with the discussion. Case of Brasher v. Carnation Co. of Texas, Tex.Civ.App., 92 S.W.2d 573, writ dismissed, was very similar in many respects to the instant case, insofar as the facts were concerned. That was also a garnishment case in which funds owing to Rohan

were garnished, and he intervened in the suit and claimed them as being exempt under the Constitution and Statutes, as did Shahan in the case before us. The testimony in that case showed that Rohan hauled milk from various points to the Carnation Company's plant, under a contract quite similar to that under which Shahan worked, but in Rohan's contract it was provided that he was an independent contractor. That provision could do no more than furnish further evidence of the intentions of the parties. Although Shahan's contract did not so state, yet if its performance would make him such, he would be none the less an independent contractor without such a recitation. The testimony in the Rohan case was, that the Carnation Company had no control over his hours, his equipment, nor the time and method used by him in delivering milk at its plant. The only requirement made by the company of him was that he satisfy the customers in his deliveries. It was there held that Rohan was an independent contractor, and that to hold his compensation was exempt as current wages for services performed necessarily implies the relationship of master and servant, and that compensation due him as an independent contractor was not exempt from garnishment. Let us see what the undisputed facts are in the instant case.

Shahan testified that he worked under the contract which we have quoted in another part of this opinion, except that part referring to the Tank Company maintaining a stock and a place of business at Graham had been abrogated, and that no place of business or stock had been kept at Graham the past three years; that his compensation was ten per cent of the F. O. B. price of goods sold and shipped by the Tank Company, on orders sent in by him and accepted by the company. That the company did not tell him when nor where to work, whom to see, except on occasions when the company had a lead of a prospective purchaser, and then it was optional with him whether he called on that concern or not, although he always did it, because he was anxious to take orders for the goods; they did not require him to work at any given time nor to begin work at any particular hour; that he went out when he pleased, sometimes worked a few hours and sometimes all night; they did not tell him when to quit; he used his own automobile and paid all expenses thereon of gas, oil and insurance; he approached prospective customers in his own way and at such times and places as he thought most conducive to getting an order; he used such sales talk as he thought right and proper to induce a purchaser to place an order with him. He performed all the details in the matter of inducing a customer to give him an order, in his own way; all the details of selling were entirely in his hands. That when he telephoned an order into the company, it exercised its own option to fill it, but if the order was accepted and the goods shipped, he was to receive ten per cent of the F. O. B. price, and that they customarily settled twice each month; once about the first and again about the middle of the month. He had nothing to do with delivering the goods nor with their installation; the company did this. That the company had no control over the manner in which he did his work and that its only concern was that he send in the orders and that the customers be satisfied. As shown by the contract, there is a stipulation in it which reads: "It is clearly agreed and understood that you have no right or authority to act for us (M. & V. Tank Co.) except as above outlined."

In view of the contract, and the undisputed facts, we conclude that the relationship of master and servant did not exist between the garnishee and Shahan, but that under the rules laid down above, the relationship was that of an independent contractor. It is only under the former status that his compensation would become current wages and therefore exempt from garnishment.

We are cited by appellant to the cases of J. M. Radford Grocery Co. v. McKean, Tex.Civ.App., 41 S.W.2d 639, and Alemite Co. v. Magnolia Petroleum Co., Tex.Civ. App., 50 S.W.2d 369, in support of their contention. Both these cases were decided by this court, but we do not consider them applicable to the fact before us now. In the McKean Case, supra, Tinsley, whose funds had been garnished, was employed by the Radford Company upon a monthly salary basis, with the agreement that in addition to the stipulated salary he was to receive a bonus at the end of the year, the amount dependent upon the gross sales he made during the year over a specified sum. The opinion by the court does not set out the contract under which Tinsley worked.

but is based upon the allegations found in the answer of the garnishee, the truth of which allegation does not appear to have been controverted. We have procured the record in that case from which the opinion was written, and while there was no statement of facts filed, the pleadings of the judgment creditor, nor his brief, controvert the truth of the statement contained in the garnishee's answer relating to the nature of the contract of employment. The court held in effect that the bonus, the amount of which depended upon named contingencies, was a part of Tinsley's current wages, and was not due or payable until the end of the year; clearly that part of Tinsley's current wages was exempt from execution, and the court so held.

The case of Alemite Co. v. Magnolia Petroleum Co., supra, differed materially from the one before us in the facts shown. Magnolia Petroleum Co. maintained a service station for retailing its products at Cleburne, Texas, and employed Moon to operate the station, agreeing to pay him for his services a commission on the products sold by him. In determining whether or not compensation for services performed is exempt from garnishment, it is immaterial that the employee was to be paid in commissions. National Cash Register Co. v. Rider; Cunningham v. International Railroad Co., both cases supra. The opinion in the Alemite Case turned upon the question of the employer having control of the details of the services rendered by Moon, and not dependent solely upon the result obtained by him. Moon was required under his contract to open the station at six o'clock in the morning and close at ten in the evening; that Moon was not to leave Cleburne without the consent of his employer, nor, was he to sell any products on credit without permission; that if he employed helpers, he was to be responsible for their acts, and to keep an accurate record of his sales and make prompt reports of same at given times. It was properly held, we think, that the relationship of master and servant was disclosed by the facts, and that his compensation amounted to "current wages" for personal services performed and was exempt from the writ of garnishment.

As before shown, none of the fact conditions in the two cases mentioned were shown to exist in the instant case, but the reverse of those facts, indisputably, appear.

Under these conditions, we conclude that Shahan was an independent contractor under the M. & V. Tank Company, and not such an agent or servant of the master as would render his compensation exempt from the writ. The trial court reached the same conclusion in which we think there is no error. The judgment is therefore affirmed.