**Xavier J. MAUMUS, Appellant,**

v.

**Ruth LYONS, Appellee.**

**No. 2–88–111–CV.**

Court of Appeals of Texas, Fort Worth.

April 27, 1989.

Kenneth C. Curry, Hurst, for appellant.

J. Dan Connelly, P.C., Arlington, for appellee.

Before WEAVER, C.J., and JOE SPURLOCK, II and KELTNER, JJ.

## OPINION

WEAVER, Chief Justice.

This is an appeal from an order entered under TEX.CIV.PRAC. & REM.CODE ANN. sec. 31.002 (Vernon 1986) (Turnover Statute) that requires appellant, Xavier J. Maumus, to turn over a portion of his future bi-weekly wages for the use and benefit of appellee, Ruth Lyons, a judgment creditor. The specific issue presented is whether the Turnover Statute authorizes the turnover of all or a portion of wages as they are received in the future. Because we find that the statute grants no such authority, we reverse and render.

The statute, in pertinent part, provides as follows:

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

(1) cannot readily be attached or levied on by ordinary legal process; and

(2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

(2) otherwise apply the property to the satisfaction of the judgment; or

(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

*Id.*

Upon the hearing of Lyons's application for turnover to satisfy a judgment in the amount of $17,290.00, the trial court found that Maumus received a paycheck from his employer every two weeks and, "[a]fter payments of amounts required for housing, food and other necessaries," Maumus had excess funds remaining. The trial court concluded that the paycheck, when received, is not exempt from attachment as current wages; the Turnover Statute applies to both present and future paychecks after their receipt; Maumus should be ordered to turn over a fair and reasonable amount; and that such amount was $87.50 from each paycheck. The modified order reads in part as follows:

IT IS ORDERED That Defendant ... deliver to the Constable, Precinct 2 ... the sum of Eighty Seven Dollars, Fifty Cents ($87.50) every other Friday, beginning July 1, 1988, the said sum to be applied against the Judgment of this Court. The sum to be turned over to the Constable is that amount of wages received by Defendant which the Court finds to be subject to turnover. Defendant shall continue to deliver the said Eighty Seven Dollars, Fifty Cents ($87.50) every other Friday until Plaintiff's, RUTH LYONS, Judgment has been paid in full....

Under point of error one, appellant attacks the turnover order and claims his paycheck constitutes current wages for personal services which are exempt from attachment, execution, or seizure for the satisfaction of liabilities, and thus, not within the purview of the turnover statute.

Appellee's position is that "a paycheck, once in the hands of a Judgment Debtor, no longer enjoys any constitutional or statutory protection as exempt current wages and is subject to turnover relief." Three cases are cited in support of that position, the earliest of which is *Sutherland v. Young,* 292 S.W. 581 (Tex.Civ.App.—Waco 1927, no writ). In that case the sole issue presented was whether wages received and deposited in a bank lost their exempt status so as to permit garnishment. The *Sutherland* court reviewed three similar cases and then stated the following:

We have reached the conclusion that, when wages are paid to and received by the wage-earner, they thereby cease to be current wages, and the exemption statute does not apply thereto. Appellant, having taken his wages and voluntarily placed them in the bank, and thereby created the relation of debtor and creditor between himself and the bank, caused the funds to be subject to garnishment, the same as if he had invested the same in property that was not exempt to him under the statutes.

*Id.* at 583. In each of the Texas cases reviewed in *Sutherland* the wage earner had: (1) voluntarily left his wages when due in the hands of his employer instead of collecting them; (2) upon receiving his wages, deposited them with another; or (3) sold exempt homestead property and converted it to cash. In one of those cases the

appellate court explained its holding in the following language:

> Whenever the wages become subject to the control of the employe, and he voluntarily leaves them with his employer, or collects and deposits them with some one else, he has robbed them of their character as current wages, and the protection extended to them by constitution and statute is lost.

*Davidson v. Logeman Chair Co.*, 41 S.W. 824, 825 (Tex.Civ.App.1897, no writ). In another case reviewed by the *Sutherland* court, our supreme court held that earned wages left with an employer for three months had lost their exempt status as current wages. *Bell v. Indian Live–Stock Co.*, 11 S.W. 344, 346 (Tex.1889).

In none of the above cases reviewed in *Sutherland* was the court dealing with the status of wages remaining in the hands of the employee. As a consequence, we regard the conclusion of the *Sutherland* court that wages paid and received cease to be current wages as unnecessary to its decision and merely dicta.

Another case relied upon by appellee is *Salem v. American Bank of Commerce*, 717 S.W.2d 948 (Tex.App.—El Paso 1986, no writ). There the court upheld an order appointing a receiver and requiring the wage earner to turn over his wages on each payday to satisfy a money judgment against him. In a single page opinion, *citing Sutherland*, 292 S.W. 581, and *Lee v. Emerson–Brantingham Implement Co.*, 222 S.W. 283 (Tex.Civ.App.—Dallas 1920, no writ), the *Salem* court held wages paid to and received by the wage earner ceased to be current wages. *Salem*, 717 S.W.2d at 948. The Dallas court, in *Lee*, held that earned wages involuntarily left with the employer were current wages and exempt from garnishment. In *Lee*, as in *Sutherland*, we perceive any expression that current wages lose their exempt status when paid to and received by the wage earner to be gratuitous, and not binding as precedent on the issue now before us.

Appellee also cites *Barlow v. Lane*, 745 S.W.2d 451 (Tex.App.—Waco 1988, writ denied). The appeal in *Barlow* resulted from the denial of an application for an order that would have required the appellee to turn over her monthly paychecks for the satisfaction of a judgment. The record showed that the proceeds of the paychecks were used entirely to provide food, shelter, clothing, and other necessities. The Waco court, while upholding the turnover denial, held that: (1) the paychecks were not exempt as current wages; (2) the matter of granting a turnover order was addressed to the sound discretion of the court; and (3) the denial of the application was not an abuse of discretion. In concluding that "[w]ages cease to be 'current' within the meaning of our exemption laws immediately on being paid to and received by the wage earner," the *Barlow* court relied solely on its previous statement in *Sutherland*, whose precedential value we have earlier questioned. *Id.* at 453.

We are aware of an inconsistency in the holdings of the courts of appeals on the issue before us, as evidenced by the relatively recent case of *Davis v. Raborn*, 754 S.W.2d 481 (Tex.App.—Houston [1st Dist.]), *writ granted*, 32 Tex.Sup.Ct.J. 32 (Oct. 19, 1988) wherein that court reversed a turnover order requiring the wage earner to endorse and turn over to a receiver all cash, checks, or other negotiable instruments which represent income, including all salary checks received from the employer, and to continue to deliver such checks as they are received. The Houston court acknowledged that its holding in *Davis* is in direct conflict with the *Barlow* and *Salem* cases. The Houston court did, however, reject the appellant's contention that his paychecks remain current wages, and followed *Sutherland* and its progeny in holding that wages lose their current status when the wage owner is paid by the employer. The *Davis* court then wrote the following:

> The pivotal issue on appeal, however, is whether a trial court can order a judgment debtor to turn over presently exempt wages that are to be received in the future.

and held as follows:

> We hold that a trial court, as a matter of law, only has the authority under the

turnover statute to order a judgment debtor to turn over checks, evidencing wages, when such checks are collected and in the possession or in the control of the debtor. Under the turnover statute, a trial court is not empowered to order a judgment debtor to turn over exempt property. Thus, a trial court can order wages turned over to a receiver only *after* the wages are paid to and received by the debtor, whether by check or in cash.

*Id.* at 483 (emphasis in original). While we concur with the results reached in *Davis,* we are constrained to differ with the views expressed by the Houston court respecting whether a check for wages loses its exempt status upon reaching the hands of the employee.

To our mind, the concept of current wages exemption springs from two separate and distinct contemplations which must be considered together. The first is expressed in the language of our constitution that "[n]o current wages for personal service shall ever be subject to garnishment, except for the enforcement of court-ordered child support payments." TEX. CONST. art. XVI, sec. 28. This contemplation is expressly recognized in TEX.CIV. PRAC. & REM.CODE ANN. sec. 63.004 (Vernon 1986).[1] The second is expressed in article XVI, section 49 of the constitution as follows:

> **Sec. 49. Protection of personal property from forced sale.**
>
> Sec. 49. The Legislature shall have power, and it shall be its duty, to protect by law from forced sale a certain portion of the personal property of all heads of families, and also of unmarried adults, male and female.

TEX.CONST. art. XVI, sec. 49. The legislative enactments in conformity with the above directive are found in two sections of the Texas Property Code, excerpts of which follow:

**Section 42.001. Personal Property Exemption**

(a) Eligible personal property that is owned by a family and that has an aggregate fair market value of not more than $30,000 is exempt from attachment, execution, and seizure for the satisfaction of debts, except for encumbrances properly fixed on the property.

(b) Eligible personal property that is owned by a single adult who is not a member of a family and that has an aggregate fair market value of not more than $15,000 is exempt from attachment, execution, and seizure for the satisfaction of debts, except for encumbrances properly fixed on the property.

**Sec. 42.002. Personal Property Eligible for Exemption**

The following personal property is eligible for the exemption:

. . . .

(8) current wages for personal services.

TEX.PROP.CODE ANN. secs. 42.001 and 42.002 (Vernon 1984).

When the above principles are applied to a paycheck received by an employee at the end of a pay period, it is evident that the question of current wages' exemption from garnishment (the writ directed to the debtor's property in the hands of a third party) becomes moot since the wages are no longer held by a third party. It is equally evident, however, that the exemption provided by sections 42.001 and 42.002 of the property code immediately becomes effective as to the current wages in the form of the paycheck, and such wages are exempt from attachment, execution, and seizure for the satisfaction of debts. Being so exempt, it would follow they are not reachable by the turnover statute.

In explanation of the underlying purpose of current wages exemption, our supreme court wrote, at an early time, the following:

> We prefer to attribute such legislation to the more humane and philanthropic pur-

---

1. Section 63.004 provides as follows:

    **Sec. 63.004. Current Wages Exempt**

    Current wages for personal service are not subject to garnishment. The garnishee shall be discharged from the garnishment as to any debt to the defendant for current wages.

pose of protecting to the employe his current earnings to meet and defray the current expenses of his living, that he may enjoy a credit to the extent of his current earnings, and not be forced into a condition of abject dependence and want.

*Bell,* 11 S.W. at 346. Although the court in *Bell* also wrote "[w]e have to deal with the phrase 'current wages,' without other limitation as to time or amount," it did not specifically address the nature and extent of protection of "current earnings" to meet "current expenses." *Id.* Neither will we, in this case, enter upon that uncharted course.

We therefore hold that wages for services performed during the pay period immediately preceding payment to an employee, whether such wages are paid in cash, by check or other means, are current wages and exempt property under the purview of the turnover statute.

Point of error one is sustained.

The judgment of the trial court is reversed and judgment rendered that appellee take nothing.