WILLIAM DIXON *vs.* THE STATE OF TEXAS — Appeal from Polk County.

Fines imposed for a violation of the laws, for the punishment of crimes and misdemeanors, are not debts within the scope and meaning of that provision of the constitution which prohibits imprisonment for debt.

The 47th section of the act of 1836 for "punishing crimes and misdemeanors," which provides that "For all fines assessed and costs of prosecution in criminal cases not capital, the person convicted may stand committed to prison by the order of the court until such fine and costs be paid," etc., is not unconstitutional. [14 Tex. 400.]

No appearance for appellant.

*Harris*, Attorney General, for the state.

Mr. Justice WHEELER delivered the opinion of the court.

The appellant was convicted under the first section of the act of 1840 "to suppress gaming." 4 Stat. 106. The [482] jury fixed his punishment at imprisonment for one day, and a fine of fifty dollars. Whereupon he was committed to prison for one day, and until he should pay the amount of fine assessed by the jury.

Subsequently, the fine and costs not having been paid, the prisoner moved the court to discharge him from custody, which the court refused, and the prisoner appealed.

The act "punishing crimes and misdemeanors," 1 Stat. 187, sec. 47, provides that "For all fines assessed and costs of prosecution in criminal cases not capital, the person convicted may stand committed to prison by order of the court until such fine and costs be paid; and when it shall be made to appear to the court that the person so committed hath no estate or means to pay such fine and costs, it shall be the duty of the court to discharge such person from further imprisonment for such fine and costs, as in its discretion may deem proper."

We are required to pass upon the constitutionality of this provision; and it is supposed to conflict with that provision of the constitution which prohibits imprisonment for debt. Const. art. 1, sec. 15.

The words "imprisonment for debt" have a well defined and well known meaning, and have never been understood

or held to apply to criminal proceedings. 4 Hill, 581; 5 id. 605; 15 Wend. 461. It is not to be supposed, and it will scarcely be contended, that it ever entered into the minds of the framers of the constitution that they were to be understood as having any application to the administration of the criminal laws, or that they were to have the effect to prevent the punishment of crimes. It was well known to them that the abolition of imprisonment for debt in other states, where it had been effected, had been held to consist with the enactment of laws for the punishment by imprisonment of criminal frauds perpetrated to avoid the payment of debts. How, then, can it be supposed that they intended that it should extend to the prevention [483] of imprisonment for other crimes, when no such inference is deducible from the language employed? It could not have been their intention to degrade the subject of misfortune to the level of the criminal, and to confound *debt* with *crime.* There is nothing to be found in the legislation of the country to warrant such a supposition. On the contrary, they have been made the subject of distinct and quite dissimilar provisions. The constitutional guaranty having been given as a shield to protect the unfortunate debtor; and the 47th section of the "act punishing crimes and misdemeanors," having been enacted to punish, and thereby restrain the offender against the laws of society.

The fine and costs imposed for offenses are not so properly the principal as an incident; not the *end,* but a *means of enforcing* obedience to the laws. In the formation of the organic law it cannot have been intended that the convicted culprit shall go wholly acquitted of punishment because a pecuniary liability may have arisen as incident to or as a means of enforcing the punishment annexed to his offense.

The object of the imprisonment authorized by the 47th section is not so much to enforce payment as to *insure punishment;* and without it a numerous class of the worst offenders, those whose offenses are most pernicious and demoralizing to society, would be licensed to violate the laws and would set them at defiance with impunity.

The great object and design of penal laws is *the prevention of crime*. This they seek to attain by means of punishments. Such is the imprisonment imposed in the present instance; being inflicted as a *punishment* consequent upon a violation of the laws and a contumacious refusal to submit to the pecuniary penalty imposed. It is the consequence which the law attaches to such refusal. Hence, if the party does not so *refuse*, but is *unable* to satisfy the pecuniary penalty, the law provides for his discharge; thus making the imprisonment to depend not upon the fact or question of his *pecuniary liability*, but *upon his refusal to submit to the judgment of* [**484**] *the law*. It is only in the event of such refusal that the law contemplates a continued imprisonment.

This is the view also which has been taken in other states whose statutory regulations upon this subject are analogous to our own. 2 Yerg. 247; 5 id. 189; id. 368.

The constitutional prohibition of imprisonment for debt was intended, as we think, for a class of persons very different from and far more meritorious than those embraced in the provision of the 47th section; and we do not think that that section conflicts either in letter or spirit with the provision in question. Nor do we see in the 47th section anything inconsistent with the provisions of the constitution and law which authorizes the jury to asess the amount of the fine in certain cases. Both provisions may well have effect and stand together. When the fine is ascertained and fixed, a refusal to pay it may be followed by the consequence contemplated in the 47th section, and it is entirely indifferent by what means the law has provided that it may be ascertained. Whether by the court or the jury, the consequence is the same.

We are of opinion that there is no error in the judgment and that it be affirmed.