Robert A. CAULLEY, Appellant,

v.

Ruth CAULLEY, Appellee.

No. A14–88–286–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 17, 1989.

Rehearing Denied Sept. 28, 1989.

Kenneth C. Kaye, League City, for appellant.

David M. Oualline, Bill De La Garza, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from a bench proceeding which resulted in an order requiring appellant to turn over his paycheck to a receiver and an order to sell certain of appellant's real property to satisfy Ohio judgments arising from a divorce obtained there by appellee, the former wife of appellant, along with expenses of obtaining full faith and credit enforcement in Texas. Appellant brings four points of error: (1) The court below erred in overruling his motion of continuance to await determination of validity of the Ohio divorce and alimony ordered thereunder; (2) The court below erred in concluding appellant's Texas farm was not his homestead; (3) The court below erred in ordering his present wife's community interest in property sold; and, (4) The court below erred in ordering 90% of appellant's future paychecks to be retained by a receiver to satisfy the Ohio and the Texas judgments. We affirm.

Appellant and appellee were formerly husband and wife, having been united for approximately thirty years in an Ohio marriage. Appellant's work brought him to Texas. In 1981, appellee filed for an Ohio divorce and later filed a "Petition for Conciliation", which appellant claims must be disposed of under Ohio statute before a final Ohio divorce may be validly entered by the court. Notwithstanding any such possible requirement, the Ohio court granted appellee a 1981 divorce under which appellant, then a Texas resident, was required to pay permanent alimony. When appellant failed to make any alimony payments, appellee obtained an Ohio judgment against him and brought it to Texas for recognition in Harris County District Court, followed by the filing of an abstract of judgment in September, 1987.

Shortly after divorce appellant remarried. His new wife had an urban home upon which she had established a Texas property tax homestead exemption. In 1983, appellant and his second wife jointly purchased a 150 acre farm in Texas with expectations of building a place for retirement scheduled to occur some time after 1990. When appellee sought to have the sheriff execute on the farm, appellant declared the farm exempt as a rural homestead and his wife "undesignated" her single family residence as an urban homestead. In the proceeding below, appellee obtained an order for a writ of execution upon the farm, appointment of a receiver, turnover of approximately 90% of appellant's net wages to the receiver, and attorney's fees.

After taking testimony, the court below made the following findings of fact:

1. A judgment for money exists against Defendant in favor of Plaintiff granted by the Common Pleas Court of Scioto County, Ohio on October 29, 1986, and it is valid.

2. The Judgment has been registered in this state on June 17, 1987 in conformity with law as a judgment of this Court.

3. A Writ of Execution was issued out on the Judgment registered in this Court on September 10, 1987 and was returned "nulla bona" by the Sheriff of Houston County, Texas because Defendant and his wife, CHRISTINE CAULLEY, claimed that 149.05 acres of land in that county was their rural homestead.

4. Defendant married CHRISTINE CAULLEY on October 14, 1981 in Webster, Texas.

5. Defendant resides with his wife in a house at 17306 Heritage House Circle, Webster, Harris County, Texas.

6. Until October 1987, CHRISTINE CAULLEY claimed the property at 17306 Heritage House Circle, Webster, Texas as homestead for the purpose of property tax exemption.

7. Plaintiff has duly recorded an Abstract of the Judgment registered with this Court as of September 23, 1987 in the Houston County Judgment Records and it is alphabetically indexed therein.

8. The affidavit declaring the Houston County property as the rural homestead of Defendant and his wife was not made or filed until after the Abstract of Judgment was filed.

9. The 149.05 acres in Houston County, Texas is not the rural homestead of Defendant.

10. The property in Webster, Texas is the permanent residence of Defendant.

11. Defendant is gainfully employed and receives monthly net pay of approximately $2,777.00 paid in installments of approximately $1,788.88 on the first (1st) of each month, and approximately $1,077.00 on the fifteenth (15th) of each month.

12. Defendant's paycheck, when received by him, does not represent current wages.

13. The reasonable value of the time expended by Plaintiff's attorneys for trial of this cause is $4,000.00.

14. The reasonable value of the attorney's services for Plaintiff if the judgment of this Court is appealed to the Court of Appeals, will be $3,000.00.

15. If a writ of error is taken to the Supreme Court of Texas, the reasonable value of attorney services regarding such appeal will be $1,500.00.

In his first point of error appellant urges us to find the trial court abused its discretion by overruling his motion for continuance to await determination of the validity of the Ohio divorce decree and the resulting judgment for alimony. Appellant cites an article from the Houston Post as well as *Enterprises & Contracting Co. v. Plicoflex, Inc.*, 529 S.W.2d 805 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ.), and *Acco International Paper Stock Corp. v. Sea–Land Service, Inc.*, 615 S.W.2d 855 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ.). We see no abuse of discretion. The court below need not have given appellant time to verify the validity of the Ohio divorce, considering appellant himself gave it sufficient credence to remarry immediately upon its entry by the Ohio court. Point of error number one is overruled.

As his second point appellant asserts the trial court erroneously concluded that the Webster property was appellant's homestead in the face of the undisputed testimony and the written homestead designation to the contrary. The way this point of error is worded leads us to believe it is framed in a "no evidence" theory, and because the relevant part of the prayer for relief seeks a reversal and rendition, we deem the point as one of legal insufficiency. *See, McGahey v. Ford*, 563 S.W.2d 857, 861–2 (Tex.Civ.App.—Fort Worth 1978, writ. ref'd n.r.e.). With regard to legal insufficiency points, the appellate court will consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may properly be drawn therefrom and disregarding all conflicting evidence. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). Testimony was heard from both the appellant and his spouse, including admissions that they spent at least 60% of the nights of the year at the house in Webster, not at the farm, no change in the homestead designation was made until after the appellee filed her abstract of judgment in Texas, and that the intent was to occupy the farm as a homestead after retirement. All of the foregoing constitutes some evidence to support the findings of the court below. Point of error number two is overruled.

In point of error number three appellant urges that the court below erred in ordering execution sale of his wife's community interest in the Houston County farm in that the order of the court directs the Houston County Sheriff to execute upon the entire property. The land was acquired after marriage and the vendor's lien deed grants title to both husband and wife, creating the presumption that it is community property, which presumption has not been rebutted. Tex.Fam.Code Ann. § 5.02; *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965). Absent evidence that the community property farm is subject to the wife's sole management, control, and disposition, the farm is presumed to be jointly managed. Tex.Fam.Code Ann. § 5.22(c). The property therefore may be subject to appellant's obligations arising prior to marriage. Tex.Fam.Code Ann. § 5.61(b)(2). A judgment against appellant husband to which the wife is not a party cannot affect

the property rights of appellant's wife. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200, 202 (Tex.1974), *Dulak v. Dulak,* 513 S.W.2d 205, 207 (Tex.1974). A purchaser at an execution sale can acquire no greater right or interest in the property than the right or interest of the judgment debtor. *Peurifoy v. Wiebusch,* 132 Tex. 36, 117 S.W.2d 773, 776 (Tex.Comm'n of App.1938—opinion adopted). *See also, 3–C Oil Co. v. Modesta Partnership,* 668 S.W.2d 741 (Tex.App.—Austin 1984, writ. ref'd n.r.e.). The order of the court below is worded as follows:

... The Sheriff or Constable executing the Writ is ORDERED to proceed as in the case of ordinary execution and make due return to this Court ...

We construe this to mean that the sheriff will only affect appellant's community interest in the property as a judgment debtor without encroachment upon the interest of appellant's spouse. Appellant's point of error number three is overruled.

▆ In his fourth and final point of error, appellant declares the order to turn over future salary checks received from appellant's employer void under *Davis v. Raborn,* 754 S.W.2d 481 (Tex.App.—Houston [1st Dist.] 1988, writ granted), or alternatively that the percentage to be turned over should be limited by the provisions of the Consumer Credit Protection Act, 15 U.S.C.A. §§ 1671 et seq. In *Davis v. Raborn,* the appellate court held that a trial court could order wages turned over to a receiver only *after* they are received by the debtor-employee and that an order to turn over future wages is tantamount to a garnishment of "current wages" prohibited by the Texas Constitution. We, like Chief Justice Evans who dissented in *Davis,* disagree with the majority *Davis* opinion and we follow the line of cases including *Cain v. Cain,* 746 S.W.2d 861 (Tex.App.—El Paso 1988, writ. denied), holding that once wages are paid to and received by a wage earner, they cease to be current wages and are non-exempt personal property subject to the turn-over statutes which do not create a prohibited garnishment of funds being held by third parties. We also follow

*Barlow v. Lane,* 745 S.W.2d 451 (Tex.App. —Waco 1988, writ. denied) holding that the issuance of a turnover order on a paycheck under section 31.002 of the Civil Practice and Remedies Code is within the sound discretion of the trial court after considering the extent to which a paycheck is used solely and fully to provide food, shelter and other family necessities. [*See Also, Buttles v. Navarro,* 766 S.W.2d 893 (Tex.App. —San Antonio 1989, no writ.), which supports the views of both *Cain and Barlow*]. In the case before us there is ample evidence that the trial court considered the earnings capacity of both spouses and the family needs before appointing the receiver and ordering the turnover of substantially all of appellant's paycheck in satisfaction of the judgment. Dealing next with appellant's argument concerning the Consumer Credit Protection Act, we find that the federal law was designed to protect the consumer from judgments in the hands of predatory lenders, not the collection of domestic support payments. Further, the Act was designed to protect the employee-employer relationship by preventing the firing of employees who attract garnishments and to put limitations on the amount of wages subject to aggregate garnishment by judgment creditors. The federal act has application only so long as the paycheck is still undelivered to the employee. While Texas courts have had little occasion to deal with questions involving the Act, other states have dealt with it and have concluded that once the paycheck has come into proper possession or control of the employee, the Act does not apply. *See, e.g., Hodgson v. Christopher,* 365 F.Supp. 583 (D.N. D.1973); *Kahn v. Trustees of Columbia University,* 109 A.D.2d 395, 492 N.Y.S.2d 33 (1985); *Edwards v. Henry,* 97 Mich.App. 173, 293 N.W.2d 756 (1980); and, *John O. Melby & Co. Bank v. Anderson,* 88 Wis.2d 252, 276 N.W.2d 274 (1979). Appellant's final point of error is overruled.

The judgment of the trial court is affirmed.

DRAUGHN, Justice, dissenting.

I disagree with the majority's interpretation that the turnover statute gives the

trial court power to order the "seizure" of an employee's current or future paycheck to satisfy the employee's judgment debt. The turnover statute, originally enacted by the legislature in 1979 as article 3827a and now codified as section 31.002 of the Texas Civil Practices and Remedies Code does not specifically set out anywhere in its provisions that "current wages" or paychecks representing such wages for personal services are subject to being seized in advance. I use the term "seized" because that in effect is the equivalent of what happens when a trial judge orders an employee debtor to turn over his paycheck or wages to a receiver or judgment creditor in advance.

For over one hundred years, the Texas Constitution has mandated that current wages for personal services are exempt from garnishment by judgment creditors. TEX. CONST. art. XVI, § 28 (1876, amended 1983). (The 1983 amendment excluded court-ordered child support payments from the exemption). Current wages for personal services are also exempt from attachment, execution, and seizure for the satisfaction of debts under sections 42.001 and 42.002(8) of the Texas Property Code. The purpose of these constitutional and statutory mandates against garnishment and other forms of legal seizure is clear: to protect the employee in providing for his and his family's current living expenses. *Bell v. Indian Live–Stock Co.,* 11 S.W. 344, 346 (Tex.1889); *Sloan v. Douglass,* 713 S.W.2d 436, 440 (Tex.App.—Fort Worth 1986, no writ.).

I find nothing in the legislative history nor in the expressed purpose of the turnover statute to indicate that the legislature, by enacting this statute, intended to abrogate that constitutional protection. See Hittner, *Texas Post–Judgment Turnover and Receivership Statutes,* 45 Tex.B.J. 417, 418 (1982). Nor do I find anything therein to suggest that the legislature intended the turnover statute to empower the courts to do what they were previously prohibited from doing—ordering the advance seizure of an employee's current wages. If the purpose of the constitutional provision was to protect the employee in providing for current expenses, and that purpose still exists, I am hard pressed to understand how an advance court-ordered seizure of such current wages differs significantly from a prohibited garnishment as to its effect on the employee in meeting his current living expenses. I have no sympathy for the judgment debtor who intentionally scorns payment of a money judgment ordered by a court, but neither am I sympathetic to judicially interpreting a statute in such a way as to avoid previous constitutional mandates, particularly when that statute is devoid of any such expressed intent.

If we judicially interpret a statute in such a way as to circumvent the effect of a clear constitutional mandate, we should do so with a statute that is either clear in its terms or specific in its purpose. This one is neither. In my opinion, it is outside our judicial prerogative to make a strained interpretation of the term "current wages" so as to emasculate the Constitution's prohibition against taking an employee's wages in advance. To make that kind of change, either the Constitution should be amended, as in the case of the child support amendment, or at the very minimum, the statute seeking such a significant change should be specific.

The turnover statute became law ten years ago. Yet only recently has it judicially been determined that its intent was to bring an employee's current wages within reach of the judgment creditor. *Buttles v. Navarro,* 766 S.W.2d 893 (Tex.App.—San Antonio 1989, no writ); *Cain v. Cain,* 746 S.W.2d 861 (Tex.App.—El Paso 1988, writ. denied); *Barlow v. Lane,* 745 S.W.2d 451 (Tex.App.—Waco 1988, writ. denied); *Salem v. American Bank of Commerce,* 717 S.W.2d 948 (Tex.App.—El Paso 1986, no writ.). This judicial extension of the turnover statute has not been totally embraced by all the appellate courts which have considered it. *See Maumus v. Lyons,* 771 S.W.2d 191 (Tex.App.—Fort Worth 1989, no writ.); *Davis v. Raborn,* 754 S.W.2d 481 (Tex.App.—Houston [1st Dist.] 1988, writ. granted). The Supreme Court may finally clarify the law in its pending

review of *Davis v. Raborn.* But as for me, on this issue at this time, I would reverse and render judgment that the appellee take nothing with regard to appellant's wages.

Alternatively, if I am wrong with regard to the reach of the turnover statute, I would still reverse and remand this judgment as to the percentage of appellant's wages ordered to be turned over to satisfy the judgment debt. I would find, based on the evidence submitted, the judge erred in ordering 90% of the appellant's pay to be applied absent any specific findings that appellant would be able to meet his current living expenses on the remaining 10% of his salary. Under this alternative I would be applying the reasoning of *Barlow v. Lane,* because it comes closest to upholding the purpose behind the constitutional and statutory mandates against advance seizure of employees' wages for debt satisfaction. While *Barlow* recognizes the turnover statute as being applicable to employee wages, it interprets the term "may" as used in the statute to allow judicial discretion in determining whether to grant or deny the relief based on the effect such a seizure would have on the employee's ability to meet his or her current living expenses. Although, it should be pointed out that at least one authority challenges the *Barlow* discretionary approach on the grounds that once employee wages have been determined to be non exempt, the court has no authority to do anything other than order their being turned over to the judgment creditor. For the court to do otherwise, this authority reasons, would be for it to assume a legislative rather than a judicial role. See Toben, and Toben, *Using Turnover Relief to Reach the Nonexempt Paycheck,* 40 BAYLOR L.REV. 195, 219, 220 (1988).

In any event, even under the *Barlow* approach, the case at hand demonstrates at best that a marginal process was used to determine that a turnover of 90% of appellant's paycheck was an equitable remedy. A search of the record shows there are no children of appellant's present marriage and that neither he nor his present wife have dependent children from prior marriages. The wife, a Certified Public Accountant, was gainfully employed, but the court sustained appellant's objection to having her level of compensation introduced as evidence. Appellant testified he used his paycheck to partially feed, clothe and provide medical care for himself and his wife. There was other testimony that most of his compensation was being used to pay the mortgage on the farm in question and to buy feed for livestock. The findings of fact make no disclosure that a 10% wage retention by appellant will safely meet his family's needs for food, shelter and clothing.

A better approach would have been to require all relevant issues on family finances be presented along with arguments for an equitable division of the paycheck, followed by a finding of fact by the court which would become the basis for the turnover order, if any, and the dollar amount or percentage of proceeds to be turned over directly to the creditor or a court-appointed receiver.

An additional point to be considered in future argument would be the community property interests of the spouse who is not a named party in the judgment sought to be enforced. It is rather basic law that the earnings of each spouse are subject to the community interests of the other spouse. Absent a partition and exchange, as allowed by Texas Constitution and the Family Code, all such earnings are community property owned one-half by each spouse. It may not be appropriate for the court to grant a turnover of more than one-half because of the property rights of the non-judgment debtor spouse. This issue was not addressed by us at this time because it was not presented, but I feel it should be addressed in trials involving petitions for the turnover of wages along with a more orderly and conscious examination of the ongoing living expenses of the wage earner-judgment debtor than was done in this case.