**Robert A. CAULLEY, Petitioner,**

v.

**Ruth CAULLEY, Respondent.**

No. C–9274.

Supreme Court of Texas.

March 6, 1991.

Rehearing Overruled April 24, 1991.

---

Kenneth C. Kaye, League City, for petitioner.

Bill De La Garza, David M. Oualline, Houston, for respondent.

## OPINION

MAUZY, Justice.

Robert and Ruth Caulley were divorced in Ohio in 1981. In 1987, Ruth filed suit in Harris County seeking to enforce an Ohio divorce judgment that ordered Robert to pay Ruth alimony. She obtained a money judgment for $34,625 against Robert from the 269th District Court of Harris County. On September 10, 1987, the Harris County District Clerk issued a writ of execution on the judgment and forwarded the writ to the Sheriff of Houston County, where Robert owned property. The writ was returned "Nulla Bona" because a homestead exemption was on file in the Houston County Clerk's office. Ruth then filed an Application for Turnover Order in the 269th District Court. She disputed the homestead exemption and asked the court to order the district clerk to reissue a writ of execution on the property, and to order that each of Robert's paychecks be turned over to her until her judgment against him was satisfied. On February 2, 1988, the trial court again ordered the district clerk to issue a writ of execution upon the Houston County property. The trial court also appointed a receiver and ordered Robert to turn over $2500 of his $2700 net monthly wages to the receiver in order to satisfy the money judgment against him.

Robert appealed and contended in the court of appeals that the homestead designation is determined by the claimant's state of mind. He also contended that the turnover statute (Tex.Civ.Prac. & Rem.Code § 31.002) is unconstitutional under Art. XVI, § 28 (prohibition against garnishment) when used to order a judgment debtor to turn over his wages to a creditor. The court of appeals rejected Robert's arguments and affirmed the judgment of the trial court. 777 S.W.2d 147. We affirm the lower courts' judgment regarding the homestead designation, but we reverse the trial court's order that Robert must turn over 90% of his net wages in order to satisfy the judgment against him.

## I. Homestead Exemption

■ One month after the September, 1981 divorce from Ruth, Robert married Christine in Texas. Before the marriage, Christine had an urban home in Harris County upon which she had established a homestead exemption. After the marriage, the couple made this home their residence. In 1983, Robert and Christine jointly purchased a 150-acre farm in Houston County. This was the property upon which the trial court ordered execution.

■ Along with the original issuance of a writ of execution, an abstract of judgment was recorded in the Houston County Clerk's office on September 23, 1987. On October 16, 1987, Robert filed a declaration that the Houston County property was his rural homestead. On October 19, 1987, Christine sought to "undesignate" the couple's Harris County residence as an urban homestead. Once homestead rights are shown to exist in property, they are presumed to continue, and anyone asserting abandonment has the burden of proving it by competent evidence. *Sullivan v. Barnett,* 471 S.W.2d 39 (Tex.1971). The trial court entered Findings of Fact and Conclusions of Law in which it found that the urban home in Harris County was the homestead of Robert and Christine. Robert contended on appeal that there was no evidence to support this finding by the trial court.

■ The court of appeals reasoned that testimony at trial revealed that Robert and Christine "spent at least 60% of the nights of the year" at their Harris County home. 777 S.W.2d at 150. Additionally, the court of appeals held that Robert tried to designate the Houston County property as homestead only after Ruth sought to enforce her judgment against that property. *Id.* Thus, the court of appeals correctly held that some evidence supported the trial court's finding that the urban home in Harris County was the homestead of Robert and Christine. Robert argued in both the court of appeals and in this Court that the Houston County property would become the couple's permanent home in a few years and that this indicates an intention on their part to make this their homestead property. While occupying a piece of property as homestead, a person cannot establish a homestead right in another place by "attempting to live there in the future". *O'Brien v. Woeltz,* 94 Tex. 148, 58 S.W. 943, 945, *modified on rehearing,* 94 Tex. 154, 59 S.W. 535 (1900); *Johnston v. Martin,* 81 Tex. 18, 16 S.W. 550, 550–551 (1891). Therefore, Robert's argument is without merit. We hold that the trial court and the court of appeals correctly decided that the Houston County property was not Robert's and Christine's homestead, and we affirm that portion of the judgment.

## II. Turnover Order

■ We need not reach Robert's constitutional challenge to the turnover statute because the trial court's order in this case is expressly prohibited by the 1989 Amendment to the turnover statute. In 1989, the following section was added to Tex.Civ.Prac. & Rem.Code § 31.002:

(f) A court may not enter or enforce an order under this section that requires the turnover of the proceeds of, or the disbursement of, property exempt under *any* statute, including Section 42.0021, Property Code. This subsection does not apply to the enforcement of a child support obligation or a judgment for past due child support. (emphasis added).

The new section was intended to specifically exempt paychecks, retirement checks, individual retirement accounts and other such property exempted under the bankruptcy code.[1] Though the amendment was not effective until June 15, 1989, it is retroactive in its effect.[2] Therefore, the added section controls even though the district court's judgment was entered before its effective date. The trial court ordered that Robert must turn over his wages to a receiver on the first and fifteenth days of each month until the judgment is satisfied. We hold that this order violates § 31.002(f) of the Texas Civil Practice and Remedies Code. By prohibiting the turnover of the *proceeds* of property exempt under *any* statute, this section necessarily prohibits the turnover of the proceeds of current wages. Tex.Prop.Code § 42.002(8) (listing current wages as one of the personal property items exempt from attachment, execution, and seizure by creditors). We therefore reverse the judgment of the court of appeals affirming the trial court's order requiring Robert to turn over his wages to a court-appointed receiver.

In sum, we affirm the judgment of the court of appeals regarding Robert's homestead designation, and we reverse the judgment of the court of appeals affirming the trial court's order requiring Robert to turn over his wages to a court-appointed receiver.

## OPINION ON REHEARING

MAUZY, Justice, concurring.

I concur with the majority's decision to overrule Ruth Caulley's Motion for Rehearing, but I write separately because of this Court's failure to address Robert Caulley's constitutional challenge to the turnover statute, Tex.Civ.Prac. & Rem.Code Ann. § 31.002.

In our original opinion, we held that the trial court's order that Robert must turn over his wages to a receiver violated § 31.002(f) of the Texas Civil Practice and Remedies Code, which prohibits the turnover of proceeds of property exempt under any statute. See page 797–98. The majority of the Court did not find it necessary to address Robert's argument that the trial court's order directing Robert to turn over his future paychecks violates our state constitution's prohibition of garnishment of wages.

I would hold that the trial court's order violates Article XVI, § 28 of the Texas Constitution. This section provides:

No current wages for personal service shall ever be subject to garnishment, except for the enforcement of court-ordered child support payments.[1]

*See also* Tex.Civ.Prac. & Rem.Code Ann. § 63.004 (current wages for personal services are not subject to garnishment).

To discern the meaning of the term "garnishment" as used in the constitution, this Court must examine the "history of the time out of which it grew ... the evils intended to be remedied and the good to be accomplished...." *Edgewood Indep. School Dist. v. Kirby,* 777 S.W.2d 391, 394 (Tex.1989) (*citing Markowsky v. Newman,* 134 Tex. 440, 136 S.W.2d 808, 813 (1940)). The constitutional framers included the garnishment exemption as a reaction to the great expansion of creditor's remedies during the early part of the nineteenth century. 2 G. Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 759 (1977). At the time of the Constitutional Convention, garnishment was the only judicial mechanism available by which a creditor could effectively seize cash, paychecks or wages from

1. House Committee On The Judiciary, Bill Analysis, Tex.H.B. 1029, 71st Leg., R.S. (1989).

2. "This Act applies to the collection of any judgment, regardless of whether the judgment is rendered before, on, or after the effective date of this Act." Acts 1989, 71st Leg., R.S., ch. 1015, § 2, 1989 Tex.Gen.Laws 4112.

1. Originally, the section read: "No current wages for personal services shall ever be subject to garnishment". However, the Texas legislature amended the section to add the exception for child support in 1983. *See* Tex.H.R.J. Res. 1, 68th Leg., 1983 Tex.Gen.Laws 6693. This amendment was approved by the voters of Texas on November 8, 1983.

a debtor. *See* Toben & Toben, *Using Turnover Relief to Reach the Non-Exempt Paycheck,* 40 Baylor L.Rev. 195, 200–202 (1985) (*citing Price v. Brady,* 21 Tex. 614 (1857)). Despite this fact, the constitutional framers sought to protect wages through the broad language adopted in Article XVI, § 28.[2] Except for the 1983 amendment to allow garnishment of wages for the collection of child support, this constitutional protection for wages has remained undisturbed in our state constitution.

This Court has recognized that as times and circumstances change, terms of art and law must be willing to change with them. In *Associated Indemnity Corp. v. Oil Well Drilling Co.,* 258 S.W.2d 523, 529 (Tex.Civ.App.—Dallas 1953), *affirmed,* 153 Tex. 153, 264 S.W.2d 697, 700 (1954) (expressly approving of the language of the court of appeals), the court of appeals stated:

> [O]ur law, even our statutory law, is a living thing capable of adjustment within certain limits to meet varying circumstances. Our law is not forever and immutably fixed like the rules of syntax of the ancient dead Latin and Greek languages. An example of what we mean is our exemption statute, Art. 3832, subd. 10, V.A.C.S. When passed in 1870, the statute named a "carriage" as exempt property. The statutory language has remained unchanged to this day. Certainly in 1870 the legislature did not have automobiles in mind when it used the word "carriage." Yet our courts had no difficulty in holding that the word "carriage" must be interpreted to include automobiles. (citation omitted).

Orders requiring turnover of paychecks have exactly the same effect as garnishment. The framers of the constitution had no way of predicting under what guise involuntary sequestering of income might be presented by future generations. The term they chose—garnishment—can only be construed to mean there shall be no involuntary sequestering of income other than for child support.[3] *See, e.g., City of Houston v. Nelius,* 693 S.W.2d 567, 569 (Tex.App.—Houston [14th Dist.] 1985, writ dism'd) (treating withholding of wages as prohibited by Article XVI, § 28 even though the withholding was not technically garnishment). The exemption's goal was to protect the debtor's use of proceeds from the paycheck. *See Sloan v. Douglass,* 713 S.W.2d 436, 440 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.); *J.M. Radford Grocery Co. v. McKean,* 41 S.W.2d 639, 640 (Tex.Civ.App.—Fort Worth 1931, no writ); *Bell v. Indian Live-Stock Co.,* 11 S.W. 344, 346 (Tex.1889).

Subsection (f), on which we based our holding in this case, was added to § 31.002 in 1989. The new section was intended to clarify that paychecks, retirement checks, individual retirement accounts, and other such property are exempt from the type of turnover order issued by the trial court in this case. See page 798. This statute recognizes that the framers used "current" in the usual sense it is used in business contexts, i.e., to refer to an obligation of the employer that is presently enforceable, and that would otherwise be subject to garnishment. *Cf. Somers v. Keliher,* 115 Mass. 165, 167 (1874) (holding future earnings, earnings not yet accrued, cannot be assigned).

A turnover order directed at Robert's wages would also ultimately prove unenforceable because the Texas Bill of Rights prohibits the trial court from enforcing a turnover order by imprisonment for debt. Article I, § 18 of the Texas Constitution provides: "No person shall ever be imprisoned for debt." This prohibition has ap-

---

**2.** Earlier versions of this section were rejected by the Committee on General Provisions. *See Journal of the Constitutional Convention of the State of Texas Begun and held at the City of Austin September 6, 1875* at 120 and 535. The framers chose to give all citizens, regardless of their wealth or earning capacity, the right of protection against garnishment. An earlier version limiting the protection to citizens who made wages above a certain dollar-figure amount was rejected. *Id.* at 557.

**3.** There was no provision for garnishment in Texas until the 1983 amendment to Article XVI, § 28 of the Texas Constitution, in which the child support exception was approved by Texas voters. *See* n. 1 for legislative history of the amendment.

**800**

peared in every version of our constitution. *See Beaumont Bank v. Buller*, 806 S.W.2d 223, 225 and n. 2 (April 3, 1991) (Mauzy, J., dissenting) (outlining the history and debates of the framers involved in drafting these constitutional provisions against imprisonment for debt); *Raborn v. Davis*, 33 Tex.Sup.Ct.J. 249, 250 (Feb. 21, 1990), *withdrawn*, 795 S.W.2d 716 (Tex.1990) (Mauzy, J., concurring) (enforcement of a turnover order by imprisonment for contempt is an unconstitutional imprisonment for debt under Article I, § 18 of the Texas Constitution).

This Court has recognized some exceptions to the prohibition of imprisonment for debt. *See Ex parte Davis*, 101 Tex. 607, 111 S.W. 394, 395–96 (1908) (child support is not a debt); *Dixon v. State*, 2 Tex. 482, 483–84 (1847) (imprisonment for debt does not apply to criminal cases). In this case, however, enforcement of the turnover order by imprisonment for contempt would clearly violate the constitution because the underlying debt that Robert owes Ruth arises from a traditional debtor-creditor relationship.

In sum, the trial court's order threatened Robert with two constitutional transgressions: garnishment of current wages, in violation of article XVI, section 28; and imprisonment for debt, in violation of article I, section 18. The legislature's enactment of section 31.002(f) does remove those threats in this case; but it does not diminish the vitality of those constitutional provisions which, from the earliest days of this state, have shielded individuals from similar abuses of the law.