**Paul BERGMAN, Appellant,**

v.

**Joan BERGMAN, Appellee.**

No. 08-93-00311-CV.

Court of Appeals of Texas, El Paso.

Nov. 23, 1994.

Rehearing Overruled Dec. 21, 1994.

under Texas law. As further grounds, Appellant argues that factual showings underlying the order are defective and that the order is insufficiently definite to be enforceable. We reverse the turnover judgment and remand the cause to the trial court for further proceedings.

## I. SUMMARY OF THE EVIDENCE

Pursuant to their divorce in Connecticut in 1975, the parties executed a separation agreement (the Agreement), whereby the rights and responsibilities of each party were established. Article XV of the Agreement provides that Connecticut law shall govern all aspects of the Agreement, including "the construction or execution of the same wherever and whenever undertaken." Thereafter, Appellee Joan Bergman obtained a judgment in Connecticut that Appellant was delinquent in his alimony payments under the Agreement.

Neither party is a resident of Texas; Appellee now resides in Florida, and Appellant resides in Santa Teresa, New Mexico. However, Appellant receives retirement benefits from American Airlines, and these benefits come from American Airlines' offices in Dallas, Texas. Appellee filed suit in El Paso County, Texas, and obtained service of process on the Appellant while he was present in the city of El Paso. On April 25, 1991, Appellee obtained a judgment in County Court at Law No. Two in El Paso that domesticated the Connecticut judgment of arrears. This judgment ordered, among other things, that the Connecticut judgment of arrears be given full faith and credit.

Following this judgment from County Court, Appellee applied for a turnover order which was granted by the trial court. On appeal, this Court reversed the order on the grounds that it was too vague to be enforced. *Bergman v. Bergman*, 828 S.W.2d 555 (Tex. App.—El Paso 1992, no writ). Thereafter, Appellee filed another application for turnover. This application was also granted, and the trial court issued a second turnover order on June 9, 1993. The trial court ordered the turnover of a portion of the retirement benefits received by Appellant to satisfy the ar-

Gordon Stewart, El Paso, for appellant.

Mary C. Baker, Law Offices of Kathleen C. Anderson, El Paso, for appellee.

Before BARAJAS, C.J., and KOEHLER and McCOLLUM, JJ.

## OPINION

McCOLLUM, Justice.

## NATURE OF THE CASE

This is an appeal of a turnover order issued by the trial court to enforce a judgment of arrears in alimony payments. In five points of error, Appellant Paul Bergman asserts that the order is invalid in that it orders the turnover of proceeds from Appellant's retirement benefits, which are exempt

rears in alimony. Appellant now appeals this second turnover order.

In his first four points of error, Appellant challenges the propriety of the order, asserting that the trial court improperly applied Connecticut law rather than Texas law. Under the laws of Connecticut, retirement benefits are only partially exempt from execution, CONN.GEN.STAT.ANN. § 52–352b(m) and § 52–361a(f), while such proceeds are totally exempt under Texas law. *See* TEX.PROP.CODE ANN. § 42.0021 (Vernon Supp.1994). In his fifth point of error, Appellant challenges the specificity of the order. At oral argument, this Court raised the issue of jurisdiction *sua sponte,* and directed the parties to file supplemental briefs on the issue of subject matter jurisdiction.

## II. *DISCUSSION*

### Subject Matter Jurisdiction

■ This Court at oral argument questioned whether a Texas court could have subject matter jurisdiction over this case. The subject matter jurisdiction of County Court at Law No. Two of El Paso County is defined by Sections 25.0003 and 25.0732 of the Texas Government Code. Section 25.0003(a) provides that: "A statutory county court has jurisdiction over all causes and proceedings, civil and criminal, original and appellate, prescribed by law for county courts." TEX.GOV'T CODE ANN. § 25.0003(a) (Vernon 1988). County courts, commonly known as Constitutional County Courts, have jurisdiction over "civil cases" where the amount in controversy is between $200 and $5,000. TEX.GOV'T CODE ANN. § 26.042(a) (Vernon Supp.1994). The specific enabling statute for El Paso's county courts at law, Section 25.0732, further provides: "In addition to the jurisdiction provided by Section 25.0003 and other law ... a county court at law in El Paso County has the jurisdiction provided by the constitution and by general law for district courts." *Id.* § 25.0732(a). District courts have jurisdiction over "all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court...." TEX.CONST. art. V, § 8. The specific enabling statute has the effect of removing any jurisdictional limit on the amount in controversy of a case filed in an El Paso County Court at Law. *See id.,* TEX.GOV'T CODE ANN. § 25.0732(a). The instant case is a civil action, seeking recognition of a Connecticut judgment based upon the Appellant's failure to pay alimony to the Appellee. Therefore, it is clear that the El Paso County Court at Law had subject matter jurisdiction of this case.

### Exempt Personal Property

In his second and third points of error, Appellant challenges the trial court's determination that the law of Connecticut, as designated in the parties' separation agreement, determines what property is exempt from turnover in satisfaction of a judgment for breach of the agreement.

■ Appellant directs us to *Bell v. Indian Live–Stock Co.,* 11 S.W. 344, 345–46 (Tex. 1889), *Schultz v. 5th Judicial District Court of Appeals,* 810 S.W.2d 738, 740 (Tex.1991), and *Reynolds v. Kessler,* 669 S.W.2d 801, 804, 805 (Tex.App.—El Paso 1984, no writ) for the proposition that a Texas court must apply the exemption laws of Texas when execution on a judgment is sought against property in Texas. The latter two cases deal with the procedural aspects of enforcing a judgment, however, and not with exemption from execution. *Bell* is applicable in that it held that the protection of Texas' constitutional and statutory exemptions for current wages applied to debtors which were residents of other states. *Bell,* 11 S.W. at 345. The Court in *Bell* found support for this proposition from the decisions of other states, and the fact that a previous Texas exemption statute applied only to residents of Texas. *Id.* at 345–46.

Of more guidance is *Strawn Mercantile Co. v. First Nat. Bank of Strawn,* 279 S.W. 473 (Tex.Civ.App.—Eastland 1925, no writ). There the Court announced the general rule that exemption laws have no extraterritorial effect. *Strawn Mercantile Co.,* 279 S.W. at 474. Consequently, exemption laws of other states were inapplicable in a Texas garnishment proceeding. *See id.* In *Strawn,* the

creditor sought garnishment of a Texas bank account containing the proceeds of an Illinois worker's compensation award. However, because the award in question was exempt in Illinois, and would have been exempt in Texas if it were an award of the Texas Industrial Accident Board, the Court held the Illinois exemption would apply under principles of comity. *Id.* at 474–75.

Also of note is *Baumgardner v. Southern Pac. Co.*, 177 S.W.2d 317 (Tex.Civ.App.—El Paso 1943, no writ). In *Baumgardner*, an employee sought to recover wages due from the Southern Pacific Company, a Kentucky Corporation operating a rail line from El Paso westward. The company had been garnished for the employee's wages by a creditor in Arizona. The employee argued that the exempt status of those wages in Texas extended to the garnishment action in Arizona, and that the company wrongfully paid over his wages. This Court stated: "Exemption laws are local in their nature and have no extraterritorial force or operation. They relate to the remedy and depend upon the law of the forum." *Id.* at 320 (*citing Chicago, R.I. & P.R. Co. v. Sturm*, 174 U.S. 710, 717–18, 19 S.Ct. 797, 800, 43 L.Ed. 1144 (1899)).

Since the decisions in *Bell, Strawn,* and *Baumgardner* were decided, however, Texas law has undergone a revolution of sorts, in that with the adoption of various sections of the *Restatement (Second) of Conflicts of Laws,* Texas courts are now often required to apply the law of other states in disputes where once Texas law would have applied. *See generally* James P. George, *Choice of Law: A Guide for Texas Attorneys,* 25 Tex. Tech L.Rev. 833 (1994). It is therefore necessary to examine those cases adopting the *Restatement* rules to see if they have changed the result dictated by *Bell, Strawn,* and *Baumgardner.*

In *Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979), the Supreme Court of Texas abolished the twin doctrines of *lex loci delicti* and dissimilarity. *Id.* at 318, 322. The *lex loci delicti* doctrine required the application of the law of the place of the wrong in cases sounding in tort. *Id.* at 313. The dissimilarity doctrine prevented the application of laws from other states and countries in Texas courts when those laws were different from the laws of Texas. *Id.* at 319–20. This doctrine was based upon notions of public policy, difficulties in translating foreign law, and practicality. *Id.* at 320. After abolishing these doctrines, the Supreme Court expressly adopted the most significant relationship test, as applied in Sections 6 and 145 of the *Restatement (Second) of Conflict of Laws,* to determine the applicable law for cases sounding in tort. *Id.* at 318.

In *Robertson v. Estate of McKnight,* 609 S.W.2d 534 (Tex.1980), the Supreme Court was faced with another conflicts of law question, which it solved by adopting a *Restatement* provision. The Court adopted Section 169, which applied the most significant relationship test to determine what state's spousal immunity law applied in tort. *Id.* at 536.

In *Duncan v. Cessna Aircraft. Co.,* 665 S.W.2d 414 (Tex.1984), the Supreme Court reaffirmed its commitment to the most significant relationship test and the *Restatement (Second) of Conflict of Laws. Id.* at 420–21. In *Duncan,* the conflicts issue facing the Court was whether Texas or New Mexico law applied in determining the effect of a release made in settlement of a tort case. *Id.* at 418. The Court abolished the doctrine of *lex loci contractus,* which required the application of the law of the place where the contract was made. *Id.* at 421. The Court applied the principles of Section 6 of the *Restatement* in determining that the facts presented a false conflict, and therefore Texas law applied.[1] *Duncan,* 665 S.W.2d at 422.

---

1. The *Duncan* Court declined to apply Section 170(1) of the *Restatement,* which requires the application of the law implicated by Section 145, stating that Cessna's liability, as a non-party to the release, implicated policies underlying both contract and tort law. 665 S.W.2d at 420 n. 4. However, the Court went on to determine that the situation presented represented a "false con-

flict" because New Mexico had no interest in the underlying dispute. *Id.* at 422. Had the Court adopted Section 170, the result would be unchanged. The same analysis applied by the Court in determining that the issue represented a "false conflict" would necessarily reach the conclusion that Texas had the most significant relationship to the occurrences and the parties. *See*

The most recent foray by the Supreme Court of Texas into the realm of conflicts of law was *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex.1990). In *DeSantis*, the Court adopted Section 187 of the *Restatement* to govern those situations where the parties had chosen a forum's law by contract, and Section 188 of the *Restatement* to govern those situations where parties had not effectively chosen law in their contract. *Id.* at 677–78, 678 n. 2. The Court also cited Section 196 with approval with regards to personal services contracts. *Id.* at 679.

Further, we must note that the *Restatement* provides a rule to determine what property exemptions are applied. The *Restatement* provides:

§ 132. Exemptions

The local law of the forum determines what property of a debtor within the state is exempt from execution unless another state, by reason of such circumstances as the domicil [sic] of the creditor and the debtor within its territory, has the dominant interest in the question of exemption. In that event, the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 132 (1971).

The comments to the section further state: "Even when the creditor and the debtor are not domiciled in the same state, a state to which they both have *substantial relationships* but which is not the state of the forum may be the state of dominant interest." *Id.* cmt. a. [emphasis added]. This formulation appears to be the rule in a majority of jurisdictions. Sheldon R. Shapiro, Annotation, *Choice of Law as to Exemption of Property From Execution*, 100 A.L.R.3d 1235, 1238–39 (1980).

Finally, we take note of the substantial competing policies underlying this issue. Exemptions, by their nature, represent a balancing of the interests of a debtor and a creditor. *See Bell*, 11 S.W. at 346. Texas law arguably balances more toward the debtor than does the law of Connecticut. *Compare* TEX.PROP.CODE ANN. § 42.0021(a) (Vernon Supp.1994) (providing that pension bene-

fits are completely exempt) *with* CONN.GEN. STAT.ANN. § 52–352b(m); *id.* § 52–361a(f) (providing that pension benefits are only 75 percent exempt). The Texas exemptions are based upon the policy that a debtor should "not be forced into a condition of abject dependence and want." *Bell*, 11 S.W. at 346; *accord Caulley v. Caulley*, 777 S.W.2d 147, 152 (Tex.App.—Houston [14th Dist.] 1989) (Draughn, J., dissenting), *rev'd in part and aff'd in part*, 806 S.W.2d 795 (Tex.1991). While balancing these interests of the debtor and creditor, we must still give full faith and credit to the judgment of the Connecticut court. U.S. CONST. art. IV, § 1.

### Contractual Choice of Law

The judgment upon which Appellee seeks her turnover order is based upon an agreement which states that "construction and execution" of the agreement is governed by the law of Connecticut. She asserts that pursuant to the adoption of Section 187 of the *Restatement* by the Supreme Court of Texas in *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990), we must apply Connecticut's law of exemptions to the execution of her judgment in Texas. We disagree.

In *DeSantis*, Justice Hecht summarized the Appellant's position thus:

We begin with what Chief Justice Marshall referred to as a principle of 'universal law ... that, in every forum, a contract is governed by the law with a view to which it was made.' *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 48, 6 L.Ed. 253 (1825). This principle derives from the most basic policy of contract law, which is protection of the justified expectations of the parties.... The parties' understanding of their *respective contractual rights and obligations* depends in part upon the certainty with which they may predict how the law will interpret and enforce their agreement.

*DeSantis*, 793 S.W.2d at 677. (Citations omitted) [Emphasis added].

Section 187 of the *Restatement* also speaks to the point: "The law of the state chosen by the parties to govern their *contractual rights*

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1)

(1971); *Id.* § 170(1).

*and duties* will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." RESTATE-MENT (SECOND) OF CONFLICT OF LAWS § 187(1) (1971) [Emphasis added]. However, the issue before us is the enforcement of a judgment, not the construction, interpretation, or enforcement of a contract. Both *DeSantis* and the *Restatement* section it relied upon speak to determining the duties and rights produced by that contract, not the enforcement of a judgment arising from breach of that contract. The Appellee's justified expectation in a contract such as this is that a Court will interpret the duty imposed on Appellant in accordance with Connecticut's family law and contract law, and that on breach of that duty, she receive a judgment for damages stemming from that breach. The trial court's judgment domesticating the Connecticut judgment, and awarding damages for its further breach, has protected these justified expectations. It is another thing entirely to find that she has a justified expectation of *satisfaction* of that judgment. Parties, though they might win on the merits, face a separate hurdle in securing satisfaction of judgment. Presumably, all states have exemption laws that will often prevent satisfaction. Similarly, though property may not be exempt, creditors with priority will often exhaust a debtor's assets before judgment creditors can execute. Further, bankruptcy proceedings can also prevent satisfaction of judgment.

We also feel the underlying policies behind exemptions do not favor extending the reach of contractual choice of law provisions to determining what exemptions apply. The long standing public policy of Texas has favored debtors over creditors. *See Bell*, 11 S.W. at 346. Extending the reach of choice of law clauses would, for example, subject thousands of Texans holding credit cards governed by agreements applying the laws of other states to the various exemptions of Utah, South Dakota, and other states favorable in their laws such that they attract the credit card subsidiaries of the large national banks. Based upon such a holding, it is clearly foreseeable that the large national banks operating in Texas would incorporate

in their future Texas loan agreements choice of law clauses designating the law of states more favorable to creditors than debtors. Such a holding would clearly eviscerate long standing Texas public policy.

Finally, the *Restatement* itself contemplates a different choice of law method for determining property exemptions, which is contained in Section 132. Even accepting the Appellee's argument that the Agreement specifically dictates the use of Connecticut's laws regarding exemptions and enforcement of judgments, such a choice of law clause is not binding with regard to the question of what property exemptions are applied in an action to enforce a judgment.

### Restatement Section 132

■ Section 132 of the *Restatement* applies the law of the forum in determining what property within that forum is exempt, unless some other state has a *dominant interest.* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 132 (1971). Usually, the state where the property is located will have the dominant interest in determining whether the property is exempt. *Id.* cmt. a. A second state has a dominant interest when both parties are domiciled in that second state. *Id.* A dominant interest can arise in favor of a second state when both parties have substantial relationships with that state. *Id.* cmt. a.

Because the Supreme Court of Texas has favored the formulations of *Restatement (Second) of Conflict of Laws*, and because we feel the rule of Section 132 embodies the holdings in *Bell, Strawn* and *Baumgardner*, we will apply the *Restatement* rule.

■ The rule creates a presumption that the local law, here the law of Texas, determines what property is exempt. This presumption can be overcome by a showing that a second state has a dominant interest in the application of its exemption laws. A showing that both parties are domiciled in a second state overcomes the presumption. The presumption can also be overcome when it is shown that both parties have substantial relationships with a second state. An examination of the record shows that: Appellee is a

resident of Florida; Appellant is a resident of New Mexico; they were divorced in Connecticut in 1975; there are no minor children; Appellant was bound to pay Appellee alimony pursuant to a separation agreement executed December 9, 1975; judgment against Appellant in the amount of $18,450 was entered in Connecticut Superior Court on October 26, 1987, for breach of the separation agreement; and judgment was entered against Appellant in the amount of $99,700 in El Paso County Court at Law No. Two on April 25, 1991, on the Connecticut judgment with interest, further breach of the separation agreement, and attorney's fees. Based upon these facts, we conclude that Connecticut does not have a dominant interest in the question of exemption.[2] Therefore, we hold that the Texas law of exemptions applies in this case. Appellant's Points of Error Nos. Two and Three are sustained.

### The Turnover Order

 In his first point of error, Appellant challenges the turnover order because it orders the turnover of proceeds of property exempt under Texas law. As discussed above, the Texas law of exemptions applies to the property sought by this turnover order. A debtor's rights in a pension or retirement plan are exempt from attachment, execution, and seizure in satisfaction of a debt. TEX. PROP.CODE ANN. § 42.0021(a) (Vernon Supp. 1994). With regard to a turnover order, the *proceeds* of property exempted under Section 42.0021(a) cannot be the subject of a turnover order. TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(f) (Vernon Supp.1994); *Caulley v. Caulley*, 806 S.W.2d 795, 797–98 (Tex.1991). Although Section 31.002(f) was enacted in 1989, its effect is retroactive. Acts 1989, 71st Leg., R.S., ch. 1015, § 2, 1989 Tex.Gen.Laws 4112; *Caulley*, 806 S.W.2d at 798.

The turnover order in question requires Appellant to apportion 25 percent of each payment he receives from his American Airlines retirement plans and pay that amount to the District Clerk of El Paso County within five days of receiving the payments. This requires turnover of the proceeds of property exempt under Section 42.0021(a) of the Property Code. Therefore, the order violates the turnover statute. TEX. CIV.PRAC. & REM.CODE ANN. § 31.002(f) (Vernon Supp.1994); *see Caulley*, 806 S.W.2d at 798. Appellant's Point of Error No. One is sustained.

Because we find that the Texas law of exemptions applies to the enforcement of the underlying judgment, and that the turnover order challenged requires the turnover of proceeds of property exempt by law, we reverse the judgment of the trial court ordering turnover of a portion of Appellant's retirement benefits, and remand the cause to the trial court.[3]

---

**2.** The exception contained in the rule would seem to apply in a situation where the husband and wife agree to a divorce with an alimony agreement, then the husband immediately liquidated his assets, moved to Texas and invested in exempt property, then breached the alimony agreement. One can imagine similar judgment debtor scenarios not involving divorce. The presence of a minor child of a marriage within another state would be a scenario perhaps capable creating a dominant interest as well.

**3.** We do not reach Appellant's Points of Error Nos. Four and Five, as the factual showings underlying the order, and the specificity of the order, are irrelevant when the order seeks turnover of the proceeds of exempt property.