# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00021-CV

**Janice Suzanne Allen, Appellant**

**v.**

**Benson A. E. Bentzin and Joan S. Bentzin, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. 96-11523, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING

Appellant Janice Suzanne Allen appeals from the district court's order directing her to turn over more than $18,000 in assets to satisfy a judgment rendered against her in favor of appellees Benson and Joan Bentzin. We will affirm.

This suit arises out of a dispute between neighbors. Allen owned lots nineteen, twenty, and twenty-four in a subdivision in Travis County.[1] Frank and Aline Fagan owned lots twenty-one and twenty-three, which were adjacent and contiguous to Allen's lots. In October 1995, the Fagans sold one of their lots to the Bentzins. In September 1996, following several disputes concerning a property easement, Allen sued the Fagans and the Bentzins. The Fagans filed a motion for summary judgment, and on April 28, 1997, the district court signed an order granting their motion; the order was filed with the district clerk on May 1, 1997. The order states that the court

---

[1] Sometime after the beginning of this suit, Allen sold lot twenty-four, which included a house, for $915,323.

heard "the Motion for Summary Judgment filed by Defendants Frank Fagan and Aline Fagan," granted the motion, ordering that Allen "take nothing in her suit against Frank Fagan and Aline Fagan." The order concludes, "All other relief not expressly granted is denied."[2]

On October 17, 1997, Allen filed a motion for clarification of the April 1997 summary judgment, asking whether the Mother Hubbard clause had the effect of disposing of all of the claims in the suit or only of Allen's claims against the Fagans. On November 12, 1997, the district court signed an order clarifying that the earlier summary judgment disposed only of the claims between Allen and the Fagans and severing that portion of the lawsuit into a separate action in which the summary judgment was a final judgment. The Bentzins and Allen continued to litigate the remaining issues, with Allen filing an amended petition and agreeing to a pretrial scheduling order. On February 24, 1999, the district court signed a final order disposing of the remaining issues and parties and ordering Allen to pay the Bentzins $18,000. After a hearing on December 23, 1999 (the turnover hearing), the district court signed the order from which Allen appeals, ordering her to turn over assets to satisfy the $18,000 judgment (the turnover order).

In her first point of error, Allen argues that the inclusion of the Mother Hubbard clause in the May 1996 summary judgment rendered it a final judgment and disposed of all issues and parties in the case. Therefore, she contends, the turnover order was void. We disagree.

When a summary judgment order appears to be final by its use of language purporting to dispose of all claims and parties, that judgment should be treated as final for purposes of appeal.

---

[2] Such language is commonly referred to as a "Mother Hubbard" clause. *Mafrige v. Ross*, 866 S.W.2d 590, 590 n.1 (Tex. 1993).

*Mafrige v. Ross*, 866 S.W.2d 590, 592 (Tex. 1993). This does not mean that any order granting summary judgment that contains a Mother Hubbard clause is automatically considered a final judgment with regard to all claims and parties to a suit. Whether an order granting summary judgment is considered a final judgment is determined by the language of the order, the record, and the parties' conduct. *Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 277 (Tex. 1996).

In this case, the order granting summary judgment, while containing Mother Hubbard language, references only the motion for summary judgment filed by the Fagans, and recites that the Fagans' motion should be granted and that Allen should take nothing against the Fagans. The order does not reference the remaining parties or claims which were not addressed by the Fagans' motion for summary judgment. Allen and the Bentzins continued to litigate the remaining claims, and Allen asked for and received clarification from the district court that the order granting the Fagans' summary judgment was not a final judgment. Viewing the record, order, and the parties' conduct, we think it is clear that the May 1997 order was not intended to be a final judgment. *Kiefer*, 920 S.W.2d at 277. The Mother Hubbard language in the order disposed only of the claims against the Fagans and does not clearly evidence an intent to dispose of other parties or claims not addressed by the Fagans' motion for summary judgment. *Vanderwiele v. Llano Trucks, Inc.*, 885 S.W.2d 843, 845 (Tex. App.—Austin 1994, no writ). Thus, the May 1997 order was not a final judgment, and actions taken by the district court after the entry of that judgment are not void. *Id.* We overrule Allen's first point of error.

In her second point of error, Allen contends there is no evidence to support the turnover order.

3

A judgment creditor may turn to the courts to obtain satisfaction of the judgment if the judgment debtor owns property that cannot readily be reached by ordinary legal processes and is not exempt from attachment, execution, or seizure for satisfaction of debts. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a) (West Supp. 2000). Except in certain circumstances, a court may not order the turnover of property exempt under any statute, such as paychecks, retirement checks, and various personal property exempted under chapter 42 of the Texas Property Code. *Id.* § 31.002(f); Tex. Prop. Code Ann. §§ 42.001-.005 (West 2000); *Caulley v. Caulley*, 806 S.W.2d 795, 797-98 (Tex. 1991). A turnover proceeding is intended to determine whether an asset is in the possession or under the control of the debtor. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991). The party claiming that property is exempt from court-ordered turnover has the burden of proving the exemption. *Jacobs v. Adams*, 874 S.W.2d 166, 167 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Rucker v. Rucker*, 810 S.W.2d 793, 795-96 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

We review a turnover order under an abuse of discretion standard. *Buller*, 806 S.W.2d at 226; *Parks v. Parker*, 957 S.W.2d 666, 667 (Tex. App.—Austin 1997, no pet.). We will not reverse a trial court's decision unless the court acted in an unreasonable or arbitrary manner or without reference to any guiding rules or principles. *Buller*, 806 S.W.2d at 226; *Parks*, 957 S.W.2d at 668. Whether a turnover order is supported by evidence is a relevant consideration in determining if a trial court abused its discretion. *Buller*, 806 S.W.2d at 226; *Parks*, 957 S.W.2d at 668. Even a

turnover order predicated on an incorrect conclusion of law will not be reversed if it is sustainable for any reason. *Buller*, 806 S.W.2d at 226.[3]

Allen was the only witness to testify at the turnover hearing. She testified that she had established a revocable living trust and had transferred all of her property into the trust. She stated she did not own any property outside of the assets transferred into the trust. Allen is the trustee and has the power to buy and sell trust properties. Allen's three adult children are beneficiaries of the trust. Included in the trust are payments of $7,000 Allen receives each month in payment of the $915,323 note owed to her by the buyer of her house (the note), all of Allen's personal possessions, a mutual fund account, her art collection, and three lots of real estate. Allen stated her main source of support is from the note. She said each $7,000 monthly payment "goes into the trust, and I—I use it as a checking account." She uses the trust as a checking account to pay all bills for her personal needs. Allen stated that other than the trust, she had no other means to pay the Bentzins' judgment. Allen signed the instrument creating the trust on January 21, 1999, to be effective as of November 10, 1998. Allen testified as follows:

> Bentzins' attorney: [I]t was your intent to transfer all of your property into the trust, correct?

---

[3] Allen cites *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720 (Tex. App.—Corpus Christi 1994, writ denied), for the proposition that a judgment unsupported by evidence cannot stand. In *Herschbach*, the trial court stated that plaintiffs' counsel had conceded two causes of action, but the evidence indicated and the appellate court held that no such concession had been made. *Id.* at 734. However, *Herschbach* concerned a summary judgment, which is reviewed under a different standard than are turnover orders. As noted above, a turnover order is reviewed for an abuse of discretion and whether the order is supported by evidence is simply a factor to be considered. *Buller*, 806 S.W.2d at 226; *Parks*, 957 S.W.2d at 668.

5

Allen: Yes.

Bentzins' attorney: To make sure there was nothing left.

Allen: To protect — Yeah, for protection —

Bentzins' attorney: That's right.

Allen: — for my children.

On cross examination by her own attorney, Allen said that she had control over the trust's checking account and that she believed "revocable" meant she had the authority to use the trust. She stated she began working on the trust in 1994 or 1995, when she attempted to create a trust by herself. She later dissolved her self-created trust and had an attorney draw up the current trust documents. Allen said the only reason she created the trust is because she believed it would protect her assets upon her death for the benefit of her children.

While Allen is correct that she did not testify as to some of the findings recited in the turnover order, that by itself does not mean that the turnover order must be struck down.[4] Allen testified that she had transferred all of her assets into the trust to protect them. She stated she did not own any property outside of the trust. She stated she used the trust as a checking account for her own expenses. While Allen did testify that she had tried to establish a trust long before the entry of the judgment against her, the district court as the fact finder at the hearing was not obligated to

---

[4] The turnover order states that Allen had refused to fully answer discovery propounded by the Bentzins and refers to Travis County real property records. However, Allen did not testify about discovery and the record from the hearing does not include any real property records. In any event, those findings are not essential to the findings that Allen's transferring her property into the trust was an attempt to avoid creditors and that Allen should be ordered to turnover assets to the Bentzins.

believe all of her testimony. *Buller*, 806 S.W.2d at 227. The district court could reasonably have believed that Allen's use of the trust was an attempt to avoid her creditors. Allen has not shown that the court abused its discretion in entering the turnover order. We overrule Allen's second point of error. We affirm the trial court's judgment.

_____

J. Woodfin Jones, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed:   November 30, 2000

Do Not Publish

7